IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| VIRIDIS DEVELOPMENT CORPORATION, a Virginia corporation,<br><br>      Plaintiff,<br><br>v.<br><br>BOARD OF SUPERVISORS OF CHESTERFIELD COUNTY, VIRGINIA, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action:  3:14-cv-00589-JRS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT

Plaintiff Viridis Development Corporation, by counsel, states the following in support of its Amended Complaint against Defendants Board of Supervisors of Chesterfield County, Virginia; James Holland; Steve A. Elswick; Daniel A. Gecker; Dorothy Jaeckle; Art Warren; and The County of Chesterfield, Virginia:

### Introduction

1. This action seeks vindication for the violation of the federal and state constitutional rights of plaintiff Viridis Development Corporation ("Viridis"), a small homebuilder doing business in defendant County of Chesterfield ("Chesterfield" or "County"), a political subdivision of the Commonwealth of Virginia ("Commonwealth").

2. Chesterfield funds capital improvements to its public infrastructure through the liberal use of cash payments extracted from homebuilders like and including Viridis who seek to develop residential projects in that jurisdiction.

1

3. Acting through defendant Board of Supervisors of Chesterfield County, Virginia, ("Board"), Chesterfield demanded cash payments from Viridis to approve an amendment to the zoning for an existing project. However the cash payments lacked an essential nexus to and were out of rough proportion with the impact of the development.

4. When Viridis refused to accede to these demands—offering instead to construct needed public infrastructure, of approximately the same value as the cash proffers —the Board denied Viridis' request, demanding both the cash payments and construction of the public infrastructure.

5. The Board's imposition of such confiscatory demands for cash payments as a condition of development approval in this instance is a violation of Viridis' rights under (i) the Fifth Amendment of the United States Constitution, as applied to the States by the Fourteenth Amendment thereto, (ii) Article I, Section 11 of the Virginia Constitution, which guarantees that private property will not be taken for public use without just compensation, and (iii) Article VII, Section 2 of the Virginia Constitution, which limits the power of counties to that which is expressly provided for by statute.

6. To prevent further damage to its interests which it has suffered and continues to suffer, Viridis requests (i) a declaratory judgment and injunctive relief requiring the Board, acting through its members as set forth *infra*, to issue the development permit without such cash payments being made, (ii) an award of compensatory damages and (iii) an award of reasonable attorneys' fees and costs against Chesterfield, the Board, and the members of the Board of Supervisors in their official capacities, as set forth *infra*, and such further relief as set forth herein.

**Jurisdiction and Venue**

7. This case is brought under 42 U.S.C. §§ 1983 and 1988.

8. Subject matter jurisdiction is based on (i) 28 U.S.C. §§ 1331 and 1343(a)(1) and (3), and (ii) 28 U.S.C. § 1367. The Court is empowered to hear and declare the rights and other legal relations of any interested party seeking such declaration pursuant to 28 U.S.C. § 2201. There is a justiciable controversy involving the parties based upon Viridis' assertion of its rights as set forth herein and the defendants' denial of the same.

9. Venue is appropriate in this District and this Division under 28 U.S.C. § 1391(b), because jurisdiction is not founded on diversity of citizenship, all defendants reside in this District, and all events giving rise to the claim occurred in this District.

**The Parties**

10. Viridis is a corporation organized and existing under the laws of the Commonwealth of Virginia. It owns a 22-acre parcel of land in Chesterfield, known as the Forest Ridge Project ("Forest Ridge," as further identified in Chesterfield Zoning Case 06SN0127).

11. Chesterfield is governed by the Board, the elected governing body. The Board exercises the planning and zoning authority for the County, to the extent it is permitted to do so by the Commonwealth.

12. The Board acts through its individual members, defendants James Holland, Steve A. Elswick, Daniel E. Gecker, Dorothy Jaeckle and Art Warren, all of whom were acting in their official capacities at all times pertinent to this controversy.

13. The terms "Chesterfield," "County" and "Board" also refer to and include all elements of County government, including its agencies, commissions, employees and agents of the Board and County.

Facts

14. Viridis acquired Forest Ridge in 2008, after Chesterfield had conditionally rezoned the property for a 49-unit residential subdivision.

15. Virginia Code Ann. § 15.2-2298, the statute which enables conditional zoning, allows Chesterfield to include provisions for "proffers" in its zoning ordinance, provided that "(i) the rezoning itself gives rise to the need for the conditions and (ii) the conditions have a reasonable relation to the rezoning."

16. Chesterfield purportedly uses funds obtained from "cash proffers" to pay for capital improvements to its public infrastructure. Chesterfield's stated policy is to calculate a potential maximum cash payment based on each dwelling unit's "impact" on new road, school, public safety (i.e., fire, police and EMS) and recreation infrastructure requirements in the County. *See* Chesterfield County Cash Proffer Policy, September 2013, Sec. (A)(4), ("Cash Proffer Policy"), attached as **Exhibit 1**.

17. As an alternative to cash payments, the Cash Proffer Policy states that the County may accept land dedication or the developer's construction of *some* public facilities ("In-kind Proffers").

18. If In-kind Proffers are accepted, Chesterfield is to give credit—equal to the value of the dedicated land or the cost of the public facility construction—against the potential maximum cash payment. Chesterfield calculates the maximum cash proffer based on specific

4

"capital facility categor(ies)" and credits for In-kind Proffers are applied to specific capital facility categories. *See* Exhibit 1 at Sec. (A)(1).

19. This practice - if followed - would be consistent with the enabling statute which requires that Chesterfield account for "the improvements for which the cash payments were proffered" and to begin construction within twelve (12) years of receipt of money. Va. Code Ann. § 15.2-2303.2.

20. When Forest Ridge was rezoned in 2006, Chesterfield imposed the maximum potential cash proffer payment, but credited against that sum the cost of substantial off-site storm drainage improvements which the former owner of Forest Ridge promised to construct. *See* Forest Ridge 2006 Rezoning, Proffered Conditions, ¶ (9)(a), attached as **Exhibit 2**.

21. This storm drainage construction was designed to address an existing flooding problem for properties south of Forest Ridge which were served by an inadequate, County approved, owned and maintained drainage way.

22. Although the drainage way touches three of the 49 Forest Ridge lots, storm drainage from Forest Ridge *did not cause* the flooding problem. Moreover, storm drainage from a fully-developed Forest Ridge would only marginally contribute to the pre-existing problem.

23. Chesterfield's policy is to spend cash proffers for the construction of new capital infrastructure improvements (as opposed to operating or maintenance costs) within each of the specific "capital facility categor(ies)" for which the money is collected. Furthermore, because "(t)here must be a relationship between the rezoning itself and the need for a public facility" Chesterfield seeks to "ensure that money proffered by an applicant (developer) is used to fund the public facilities necessitated by the development." *See* Exhibit 1 at Sec. (B)(2).

24. To do so, the Board has divided the County into geographic service districts. For some facilities, which the County deems are countywide, the "cash proffer" may be spent countywide. For other facilities, such as roads and schools, the cash "proffer will be spent within smaller service districts." *See* Exhibit 1 at Sec. (A)(6).

25. The 2006 rezoning approval allocated the cash payments across a number of public infrastructure projects:

> At the time of payment, the $11,225.00 will be allocated pro-rata among the facility costs as follows: $3836.00 for schools, $433.00 for parks and recreation, $6415.00 for roads, $250.00 for libraries, and $291.00 for fire stations.

*See* Exhibit 2 at ¶ (2)(a)(i).

26. In 2012, Viridis asked Chesterfield to (i) add one (1) lot to Forest Ridge and (ii) amend the proffered conditions by eliminating the cash payments. In exchange for the elimination of the cash payments, Viridis offered to (i) construct an off-site right hand turn lane on the Courthouse Road, at the intersection with Cherylann Lane, and (ii) amend and then construct the existing plans to correct storm drainage problem that was not caused by Forest Ridge.

27. Courthouse Road is a main arterial highway in Chesterfield and Cherlyann Lane provides access to the larger neighborhood of developments in which Forest Ridge is located. *See* Staff's Request Analysis and Recommendation, at Proffered Condition 2, attached as **Exhibit 3**. While the right turn lane may be needed, its need does not arise solely from the development of Forest Ridge. In response to expressed concerns, Viridis amended the plans for the off-site storm drainage improvements, while continuing its offer and promise to construct whatever off-site improvements that were necessary to alleviate the flooding problem that was caused by the County's outdated drainage system.

28. The amended storm drain plans were reviewed and approved, subject to the Board's approving the rezoning amendment request.

29. Viridis supported its request for relief from the cash payment requirements by noting that approval of the Forest Ridge rezoning amendment caused no adverse impact on any other public facilities. Viridis also noted that the schools in the Forest Ridge service district were substantially below capacity. Indeed, based on a study conducted by Viridis, the schools would never reach capacity -- even if all the land available for development in that service district were to be developed at its maximum allowable density. Further, Viridis noted that public safety infrastructure (e.g., police, fire and EMS), library services and recreational facilities had been recently constructed in the Forest Ridge service district, and that no additional local facilities were contemplated by the Chesterfield's Capital Improvement Plan.

30. Thus, the only demonstrable infrastructure impacts to result from the development of Forest Ridge were in transportation and the environment. Those impacts were addressed by the offers to build the right-turn lane and to construct the offsite drainage improvements.

31. Although the Chesterfield Staff approved the addition of one lot to the project and readily accepted the offer to construct the right turn lane on Courthouse Road and to correct the drainage problem, the Staff opposed Viridis' request to eliminate the cash proffers. In its report and recommendation to the Board, County Staff did not address the Cash Proffer Policy which mandates that consideration be given to crediting the In-kind Proffers, such as the transportation and drainage improvements offered by Viridis against the potential maximum cash proffer.

32. The Chesterfield Planning Commission, a citizen board appointed by the Board to hear and approve or deny land use requests, (i) reviewed Viridis' request at a public hearing, (ii)

sided with Viridis, and (iii) voted to approve its request to amend the zoning for Forest Ridge and to eliminate the cash proffer payment.

33.     Later, when the matter proceeded on to the Board, the Staff repeated its position and recommended that the Board deny the amendment request because Viridis wanted to eliminate the cash proffers.

34.     At a public hearing conducted on July 23, 2014, the Board rejected the amendment request because Viridis refused to pay maximum cash proffers.

35.     Supervisor Art Warren ("Warren") read the formal motion to deny Viridis' request to amend the rezoning.  Although couched in terms of Viridis having failed to address the project's impact on capital facilities, Warren's motion, his comments, the comments of Supervisors, and the comments of the Staff in response to questions from the Board together demonstrate that the basis for denial was Viridis' refusal to accede to the demand for the maximum cash payment. (Supervisor Warren's comments, which are incorporated by reference, may be heard beginning at hour 2:28 of the video of the July 23, 2014 Board of Supervisor's Meeting - http://www.chesterfield.gov/content3.aspx?id=9368) The Board took this action even though Viridis had adequately addressed the actual impacts of its development on County infrastructure by promising to build an off-site turn lane that would benefit all communities in the neighborhood and to remedy an off-site flooding problem caused by Chesterfield's inadequate storm drainage facilities.

36.     No one on the Chesterfield Staff or the Board suggested, discussed or considered applying the Cash Proffer Policy which requires consideration of crediting in-kind improvements, such as the turn lane and the off-site drainage improvements against the maximum cash payment.

COUNT I
CHESTERFIELD'S EXTORTIONATE LAND USE EXACTION DEMANDS VIOLATE
THE TAKING CLAUSE OF THE FIFTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

37. Viridis repleads Paragraphs 1 through 36 herein.

38. The United States Supreme Court has long applied the Fifth Amendment's Takings Clause to governmental land use regulation. Although the Court acknowledges that local governments have a legitimate right to regulate land use, the Court has stated that "[e]xtortionate demands for property in the land user permitting context run afoul of the Takings Clause not because they take property but because they burden the right not to have property taken without being compensated for it." Koontz v. St. Johns River Water Management Dist., 570 U.S. _____, ____, 133 S. Ct. 2586, 2590 (2013).

39. The Court has fashioned a two-part analysis to determine when government land use exactions become unconstitutional. When exactions are challenged, the government must prove that: (a) there is an "essential nexus" between the exaction and a legitimate government purpose, and (b) there must be a "rough proportionality" between the exaction and the impact of the proposed development, determined on an individualized case-by-case basis.

40. Chesterfield's refusal to approve Viridis' zoning request lacks both "essential nexus" and "rough proportionality" between the cash payments and the In-kind Proffers demanded and the impact of Forest Ridge on public infrastructure, as set forth below:

(a) The Cash Proffer Policy states that the cash payments demanded for land use approvals will be spent "to fund the public facility needs generated by any new residential development." See Exhibit 1 at Sec. (A)(4)(3);

9

(b) The Cash Proffer Policy states that Chesterfield has been divided into geographic service districts and that funds for "roads and schools" will be spent within smaller service districts . . ." *See* Exhibit 1 at Sec. (A)(6);

(c) The schools in the district in which Forest Ridge is located are under capacity by twenty percent (20%), and no new schools are scheduled to be built or expanded in that district;

(d) Because (i) Forest Ridge will not add students to the school system in the service district which Chesterfield has designated as the district in which the funds will be spent and (ii) the schools within that district will never be at capacity, there is neither an "essential nexus" nor "rough proportionality" between the payment of the cash proffer and the impact of Forest Ridge;

(e) The County Staff estimated that the impact of the Forest Ridge project on roads was $386,000 and that Viridis' offer to construct the right-hand turn lane at the intersection of Courthouse Road and Cherylann Road adequately addressed that impact; *See* Exhibit 3 at page 7:

(f) Forcing Viridis to pay the maximum cash proffer, - which necessarily includes Chesterfield's calculated cost of the impact of Forest Ridge on roads - when Viridis had already addressed that impact by offering to build the right-hand turn lane at the intersection of Courthouse Road and Cherylann Road, is tantamount to making Viridis *pay twice* for the same impact on public infrastructure—thus, "essential nexus" and "rough proportionality" are lacking;

(g) Contrary to Chesterfield's position that the failure to accede to its demands for cash payments left unmitigated impacts on park, library and fire station facilities,

Chesterfield's Comprehensive Plan and Capital Facilities program contemplate no such facilities to be built in the Forest Ridge service district;

(h)     Viridis' offer to construct substantial off-site drainage improvements that would alleviate a long-standing flooding problem in the larger neighborhood of residential communities in the area adequately addressed environmental impacts so much so that in the 2006 rezoning Chesterfield was willing to credit the cost of that construction against the then maximum cash proffer; and,

(i)     Despite language in the Cash Proffer Policy to the effect that In-kind Proffers, such as the drainage and road improvements offered by Viridis, could be credited against the cash payments, the Chesterfield Staff and the Board did not take this into consideration. Instead they demanded that Viridis pay the "current maximum cash proffer," based on County Staff's assessment that the current maximum cash proffer was "lower than what was approved with the original case," when adjusted for inflation. Thus, "essential nexus" and "rough proportionality" are lacking.

41.     Because of the conduct set forth in Paragraph 40, the Board's decision is unconstitutional.

## COUNT II
## CASH PROFFER POLICY IS *ULTRA VIRES* AND UNCONSTITUTIONAL UNDER VIRGINIA LAW

42.     Viridis repleads Paragraphs 1 through 41 herein.

43.     The Virginia Constitution states that the General Assembly shall provide by general law for the organization, government, powers, change of boundaries, consolidation, and dissolution of counties, cities, towns, and regional governments. Art. VII, § 2. The Virginia

Constitution guarantees that private property will not be taken for public use without just compensation. Art. I, § 11.

44. Chesterfield is a political subdivision of the Commonwealth organized and empowered pursuant to the above-referenced constitutional provision. As such, it is subject to Dillon's Rule which holds that counties have no powers "except such as are clearly and unmistakably delegated by the legislature." *Board of Supervisors v. Town of Purcellville*, 276 Va. 419, 437, 666 S.E.2d 512, 521 (2008).

45. The Virginia General Assembly has authorized certain local governments—including Chesterfield—to engage in conditional zoning "provided that (i) the rezoning itself must give rise for the need for the conditions; (ii) the conditions shall have a reasonable relation to the rezoning and (iii) all such conditions shall be in conformity with the comprehensive plan." Va. Code Ann. § 15.2-2298.

46. In this case, the conditional zoning demands applied by the Board are *ultra vires* and unconstitutional because: (i) the requested amendment to the Forest Ridge zoning does not give rise to additional burdens on the school district where it is located, (ii) the Comprehensive Plan does not contemplate or plan for additional school, library, parks or public safety facilities in the district where Forest Ridge is located , and (iii) Chesterfield's demand that Viridis pay the maximum cash proffer and construct the In-kind Proffers Viridis offered as an alternative to the cash payment effectively doubles the cost of such proffers over what Chesterfield has calculated to be the maximum impact of the Forest Ridge Project on public facilities.

47. The only specific reference in § 15.2-2298 to cash proffers is in the context of off-site transportation improvements that are part of the locality's comprehensive plan and capital improvements program.

48. Notwithstanding this language, Chesterfield has adopted the Cash Proffer Policy which is utilized to calculate estimated infrastructure construction costs in multiple categories including schools, parks and recreation, public safety and libraries. Nowhere does the enabling legislation authorize the use of cash contributions for these categories and thus, Chesterfield's Cash Proffer Policy is *ultra vires* and unconstitutional.

49. Chesterfield's demands for both maximum cash proffers and In-kind Proffers, *supra,* is an unconstitutional taking of private property because: (i) the request to amend the zoning of Forest Ridge does not give rise to the need for the proffers demanded, (ii) the proffers do not have a reasonable relation to the zoning amendment request, (iii) Chesterfield has failed to follow its own policy in evaluating and giving credit for In-kind Proffers against the maximum cash proffer.

**Basis for Relief**

50. In cases such as this one involving the denial of a permit based on an unconstitutionally extortionate demand, the question of the available remedy, whether state or federal is a question of the cause of action being brought.

51. Declaratory relief is requested pursuant to 28 U.S.C. § 2201 and damages and injunctive relief are requested pursuant to 42 U.S.C. § 1983.

52. Effective July 1, 2014 "any applicant aggrieved by the grant or denial by a locality of . . . a conditional use permit where such grant included or denial was based upon an unconstitutional award of compensatory damages and to an order remanding the matter to the locality with a direction to grant or issue such permits or approvals without the unconstitutional condition and *may be entitled to reasonable attorneys' fees and court costs.*" Va. Code § 15.2-2208.1 (emphasis added).

**Prayer for Relief**

WHEREFORE, Viridis respectfully requests that this Court enter an Order:

a. Declaring that Defendants' denial of Viridis' request to amend its rezoning application for Forest Ridge by eliminating cash proffers constitutes an unconstitutional condition on the exercise of Viridis' Fifth Amendment right to use of its property;

b. Declaring that Defendants' denial of Viridis' request to amend its rezoning application for Forest Ridge by eliminating cash proffers is *ultra vires* and unconstitutional under Article I, Section 11 and Article VII, Section 2 of the Constitution of Virginia and beyond the scope of the authority granted to Defendants by the Virginia General Assembly;

c. Declaring that Chesterfield's Cash Proffer Policy is *ultra vires* and unconstitutional under Article VII, Section 2 of the Constitution of Virginia and beyond the scope of the authority granted to Defendants by the Virginia General Assembly;

d. Awarding Plaintiff compensatory damages in such amount as may be proved at trial;

e. Enjoining and directing the Board through its Supervisors to grant or issue such permits or approvals without the unconstitutional conditions;

f. Awarding Viridis its reasonable attorneys' fees and costs; and,

g. Awarding Viridis such further relief as the Court deems just and proper.

Dated: September 29, 2014

VIRIDIS DEVELOPMENT CORPORATION,
a Virginia corporation,

By  /s/ Robert R. Gordon
Wyatt B. Durrette, Jr., Esquire (VSB #04719)
Robert R. Gordon, Esquire (VSB #18711)
Bruce E. Arkema, Esquire (VSB #18625)
Barrett E. Pope, Esquire (VSB #20574)
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Telephone:    (804) 775-6900
Facsimile:    (804) 775-6911
wdurrette@durrettecrump.com
rgordon@durrettecrump.com
barkema@durrettecrump.com
bpope@durrettecrump.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of September, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jeffrey L. Mincks, Esquire
countyattorney@chesterfield.gov

 /s/   Robert R. Gordon
Wyatt B. Durrette, Jr., Esquire (VSB #04719)
Robert R. Gordon, Esquire (VSB #18711)
Bruce E. Arkema, Esquire (VSB #18625)
Barrett E. Pope, Esquire (VSB #20574)
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Telephone:    (804) 775-6900
Facsimile:    (804) 775-6911
wdurrette@durrettecrump.com
rgordon@durrettecrump.com
barkema@durrettecrump.com
bpope@durrettecrump.com