

# Chesterfield County, Virginia
## Department of Planning

9901 Lori Road – P.O. Box 40 – Chesterfield, VA  23832-0040
Phone: (804) 748-1050 – Fax: (804) 717-6295 – Internet: chesterfield.gov

**KIRKLAND A. TURNER**
Director

September 28, 2006

J. Mark Sowers
1475 Oakbridge Court
Powhatan, VA 23139

RE: Case 06SN0127

Dear Mr. Sowers:

This letter is to advise you that on August 23, 2006, the Chesterfield County Board of Supervisors approved your request for rezoning and amendment of zoning district map from Agricultural (A) to Residential (R-12) as stated in Enclosure 1 on property lying off the eastern terminus of North Vickilee Road and Vickilee Court, the northern terminus of Vickilee Road and western terminus of Marblethorpe Road and being Tax IDs 746-699-8830; and 747-699-0340, 0744, 1248, 1750, 2453 and 4454.

If we can be of further assistance to you in this matter, please do not hesitate to contact Jane Peterson at (804) 748-1045.

Sincerely,

Kirkland A. Turner
Director, Planning Department

Enclosure

BOARD OF SUPERVISORS

MINUTES

August 23, 2006

Supervisors in Attendance:

Mr. R. M. "Dickie" King, Jr.,
  Chairman
Mr. Kelly E. Miller, Vice Chrm.
Ms. Terri Cofer Beirne
Mrs. Renny Bush Humphrey
Mr. Arthur S. Warren

Mr. Lane B. Ramsey
County Administrator

Staff in Attendance:

Colonel Carl R. Baker,
  Police Department
Mr. George Braunstein,
  Exec. Dir., Community
  Services Board
Mr. Allan Carmody, Dir.,
  Budget and Management
Ms. Jana Carter, Dir.,
  Juvenile Services
Ms. Marilyn Cole, Asst.
  County Administrator
Mr. Roy Covington, Dir.,
  Utilities
Ms. Mary Ann Curtin, Dir.,
  Intergovtl. Relations
Mr. Charles Dane, Asst.
  Dir., External Services
Mr. Jonathan Davis, Real
  Estate Assessor
Mr. Will Davis, Dir.,
  Economic Development
Mr. Robert Eanes, Asst. to
  the County Administrator
Mrs. Lisa Elko, CMC,
  Clerk
Mr. Michael Golden, Dir.,
  Parks and Recreation
Mr. Lawrence C. Haake, III
  Registrar
Mr. John W. Harmon,
  Right-of-Way Manager
Mr. Russell Harris, Mgr.
  of Community Development
  Services
Mr. Joe Horbal,
  Commissioner of Revenue
Mr. Thomas E. Jacobson,
  Dir., Revitalization
Mr. Donald Kappel, Dir.,
  Public Affairs
Ms. Mary Lou Lyle, Dir.,
  Accounting
Mr. Mike Mabe, Dir.,
  Libraries
Chief Paul Mauger,
  Fire Department
Mr. R. John McCracken,
  Dir., Transportation
Mr. Richard M. McElfish,
  Dir., Env. Engineering
Mr. Steven L. Micas,
  County Attorney

06-737

08/23/06

                         Mr. Francis Pitaro, Dir.,
                          General Services
                        Ms. Leigh Robbins, Exec.
                          Dir., Lucy Corr Village
                        Mr. James J. L. Stegmaier,
                          Deputy Co. Admin.,
                          Management Services
                        Mr. M. D. Stith, Jr.,
                          Deputy Co. Admin.,
                          Community Development
                        Mr. Kirk Turner, Dir.,
                          Planning
                        Mr. Scott Zaremba, Asst.
                          Dir., Human Resource
                          Management

Mr. King called the regularly scheduled meeting to order at 3:07 p.m.

06SN0127

In Clover Hill Magisterial District, J. MARK SOWERS requests rezoning and amendment of zoning district map from Agricultural (A) to Residential (R-12). Residential use of up to 3.63 units per acre is permitted in a Residential (R-12) District. The Comprehensive Plan suggests the property is appropriate for medium density residential use of 1.51 to 4.0 units per acre. This request lies on 22.6 acres lying off the eastern terminus of North Vickilee Road and Vickilee Court, the northern terminus of Vickilee Road and western terminus of Marblethorpe Road. Tax IDs 746-699-8830; and 747-699-0340, 0744, 1248, 1750, 2453 and 4454.

Ms. Jane Peterson presented a summary of Case 06SN0127 and stated staff recommended approval of the rezoning, subject to the applicant adequately addressing the impact of the proposed development on capital facilities. She further stated the Planning Commission unanimously recommended approval and acceptance of the proffered conditions, noting that efforts to correct existing drainage problems merit special consideration and a reduction of the cash proffer. She stated the applicant has modified Proffered Condition 2 to address the Marshall and Swift cost index, and the Board would need to suspend its rules to consider the amended proffered condition. She further stated staff recommends denial of the waiver to street connectivity requirements because limiting stub road connections would cause a concentrated use of a particular stub road and would not adequately disburse the traffic from the proposed development. She stated the Planning Commission recommended approval of the waiver, noting the waiver would result in less disturbance of wetlands to the north and preservation of open space, while providing adequate access to the site.

Mr. Mark Sowers stated the Planning Commission's recommendation is acceptable.

Mr. King called for public comment.

No one came forward to speak to the request.

On motion of Mr. Warren, seconded by Mr. King, the Board suspended its rules at this time to allow for consideration of the amended proffered condition.

Ayes: King, Miller, Beirne, Humphrey and Warren.
Nays: None.

On motion of Mr. Warren, seconded by Mr. King, the Board approved Case 06SN0127 and accepted the following proffered conditions:

Utilities

1. This development shall utilize public water and sewer. (U)

Cash Proffer

2. Applicant, subdivider, or assignee(s) shall pay the following to the County of Chesterfield, prior to the

06-788

08/23/06

issuance of a building permit, for infrastructure improvements within the service district for the property:

a.
   i. If drainage proffer 9a is to be used, $11,225.00 per dwelling unit; or the amount approved by the Board of Supervisors not to exceed $11,225.00 per dwelling unit adjusted upward times any increase in the Marshall and Swift Building Cost Index between July 1, 2005 and July 1 of the fiscal year in which the payment is made if paid after June 30, 2006. At the time of payment, the $11,225.00 will be allocated pro-rata among the facility costs as follows: $3836.00 for schools, $433.00 for parks and recreation, $6415.00 for roads, $250.00 for libraries, and $291.00 for fire stations. Payments in excess of $11,225.00 shall be prorated as set forth above.

   ii. If drainage proffer 9b is to be used, $15,600.00 per dwelling unit; or the amount approved by the Board of Supervisors not to exceed $15,600.00 per dwelling unit adjusted upward times any increase in the Marshall and Swift Building Cost Index between July 1, 2005 and July 1 of the fiscal year in which the payment is made if paid after June 30, 2006. At the time of payment, the $15,600.00 will be allocated pro-rata among the facility costs as follows: $5331.00 for schools, $602.00 for parks and recreation, $8915.00 for roads, $348.00 for libraries, and $404.00 for fire stations.

b. Cash proffer payments shall be spent for the purposes proffered or as otherwise permitted by law. (B&M)

Timbering

3. Timber management (thinning, etc.) will only be allowed upon submission and approval of the appropriate management plan to include erosion control and the issuance of a land disturbance permit by the Environmental Engineering Department. Any other timbering shall be incorporated into the construction project erosion and sediment control plan/narrative and will not commence until the issuance of a land disturbance permit by the Environmental Engineering Department for subdivision construction and proper installation of erosion control measures. (EE)

Architectural Restrictions & Density

4. One story dwellings shall have a minimum gross floor area of 1500 square feet. Dwellings above one story shall have a minimum gross floor area of 1800 square feet. (P)

5. All exposed portions of the foundations of each dwelling unit shall be faced with brick veneer. Exposed piers

supporting front porches shall be faced with brick veneer. (P)

6. Any residential lots having sole access through Briarcliff Subdivision shall have an average lot area of not less than 12,600 square feet. Such lots shall not exceed a density of 2.9 dwelling units per acre. (P)

7. Any residential lots having sole access through Heatheridge Subdivision shall have an average lot size of 13,500 square feet. Such lots shall not exceed a density of 2.7 dwelling units per acre. (P)

8. Any residential lots having sole access through Forest Acres Subdivision shall have an average lot size of 17,400 square feet. Such lots shall not exceed a density of 2.1 dwelling units per acre. (P)

Drainage

9. a. A post development drainage study shall be performed by the developer from the southern property line of the project through the existing downstream neighborhoods to the culvert under Cherylann Road.

   The study shall determine the deficiencies in required capacity, the areas of storm-water inundations and the hydraulic interrelationships between the existing stormwater conveyance systems.

   The study shall propose those onsite and offsite manmade improvements which will cause the study area to possess storm drainage capacity that meets, to the maximum extent physically practicable, minimum standards with respect to required manmade drainage improvements and flood plain management.

   Upon approval by the Environmental Engineering Department of the drainage improvements called for in the study, the improvements shall be incorporated into the construction plans for the project and shall be implemented as the first phase of development.

   The achievement of the storm drainage goals as presented in herein shall be to the maximum extent practicable as enabled by the successful level of acquisition of easements and the issuance of Corps of Engineers and Department of Environmental Quality permits.

   b. In the event that the developer, despite his good faith and due diligent efforts, is unable to obtain the easements required for the construction and maintenance of the above listed improvements, the developer shall request, in writing, that Chesterfield County acquire such easements. All costs associated with the acquisition of the easements shall be borne by the developer. In the event that Chesterfield County chooses not to assist the developer in acquisition of the easements, or if the developer, despite his good

        faith and due diligent efforts, is unable to obtain the wetlands permits required to construct the improvements, the developer shall be relieved of the obligations to make the drainage improvements listed above and shall instead shall retain stormwater onsite to meet predevelopment flows. (EE)

Ayes: King, Miller, Beirne, Humphrey and Warren.
Nays: None.

Mr. Warren then made a motion, seconded by Mr. King, for the Board to approve the request for waiver to street connectivity requirements for Case 06SN0127.

Ayes: King, Miller, Beirne, Humphrey and Warren.
Nays: None.