IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

VIRIDIS DEVELOPMENT CORPORATION,
a Virginia Corporation,

        Plaintiff,

v.                              Civil Action No. 3:14CV589

BOARD OF SUPERVISORS
OF CHESTERFIELD COUNTY, VIRGINIA, et al.

        Defendants.

## MEMORANDUM IN SUPPORT OF
## MOTIONS TO DISMISS AMENDED COMPLAINT

DEFENDANTS, the Board of Supervisors of Chesterfield County, Virginia, James Holland, Steve A. Elswick, Daniel A. Gecker, Dorothy Jaeckle, Art Warren and the County of Chesterfield, Virginia (collectively referred to as "Defendants"), by counsel, pursuant to F.R.C.P. Rules 12(b)(1) and 12(b)(6) and Local Rule 7(F), submit this Memorandum in Support of their Motions to Dismiss the Amended Complaint of the plaintiff in this case, Viridis Development Corporation ("Viridis").

## NATURE OF THE CASE

This is a local zoning case. Viridis challenges the Chesterfield County Board of Supervisors' denial of Viridis application to modify its existing approved zoning. Viridis owns a parcel of land in Chesterfield County consisting of approximately 22.6 acres ("Property"). The Property was rezoned in 2006 at the request of the previous owner who, as part of that rezoning, offered a cash proffer as a means of addressing the impact of its proposed residential

development on County facilities.[1]  Viridis purchased the Property in 2008 subject both to the 2006 zoning and the cash proffers which the previous owner proffered as part of that rezoning.[2] Four years after Viridis purchased the Property, it filed an application with the County seeking a rezoning that would (1) increase the density from the 49 residences approved in 2006 to 50 residences and (2) eliminate the cash proffers which were made by the previous owner. Consistent with the recommendation of County Staff, the Board of Supervisors denied the application because (1) Viridis had failed to address the impact of its development on County schools, parks, fire stations, and libraries, either through offering cash proffers or by proffering other non-cash means of addressing impacts, (2) Viridis had failed to address the drainage problems which could result from the additional residences and (3) Viridis did not proffer to provide the level of quality construction that is necessary for sustainable infill development. Instead of appealing the Board' zoning decision to the local Virginia circuit court as provided by Va. Code § 15.2-2285(F), Viridis chose to challenge the decision in this federal court.

The Amended Complaint consists of two counts.  Count I contends that the Board of Supervisors' zoning decision violated the Takings Clause of the 5th Amendment of the United States Constitution.  Count II contends that the Board's zoning decision violated Article I, § 11

---

[1]  Virginia law mandates that local zoning ordinances and zoning decisions shall be designed to "facilitate the provision of adequate…fire protection…transportation …flood protection, schools, parks … playgrounds, recreational facilities, and other public requirements…."  Va. Code § 15.2-2283.  To that end, Va. Code § 15.2-2298 allows the County to accept voluntary proffers from a zoning applicant to mitigate the impact of the applicant's development on public infrastructure, including cash proffers to help offset the cost of upgrading public facilities to accommodate the new zoning.  The County's Cash Proffer Policy is designed to address the impact of new development on five categories of public facilities: roads, schools, libraries, parks, and fire stations. (County Cash Proffer Policy, Exhibit 1 to Amended Complaint, ¶A7); Gregory v. Board of Supervisors of Chesterfield County, 257 Va. 530, 536, 514 S.E.2d 350, 353 (1999).

[2] Viridis does not contend that the cash proffers that were made in 2006 were anything other than voluntarily proffered as required by Va. Code § 15.2-2298.  The former owner did not file a challenge under Va. Code § 15.2-2285(F) to the 2006 rezoning on that, or any other, ground.

and Article VII, § 2 of the Virginia Constitution, as well as Va. Code § 15.2-2298.  Viridis also alleges that it is entitled to damages and attorneys' fees under Va. Code  § 15.2-2208.1, enacted by Virginia General Assembly in 2014.  To the best of the Defendants' knowledge, the statute has not been interpreted by any Virginia Court.

Due to the decidedly local nature of this zoning dispute, the Defendants move this Court to abstain from deciding the case pursuant to the abstention principles enunciated by the United States Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315 (1943).  They also ask the Court to dismiss Count I (takings claim) because of Viridis' failure to seek compensation under Virginia procedures as required by Williamson County Reg. Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).  The Defendants move to dismiss Counts I and II, and the claim for damages and attorneys' fees per Va. Code  § 15.2-2208.1, under Rule 12 (b)(6) for Viridis' failure to state a claim on which relief can be granted.  Finally, the Defendants request the Court to dismiss the purely state law claim (Count II), and the claims under Va. Code § 15.2-2208.1, to allow disposition of those Virginia law claims by the appropriate Virginia courts.

## STATEMENT OF FACTS

For purposes of the current Rule 12 motions only, the Defendants accept as true the allegations contained in the Amended Complaint:  The Property consists of approximately 22.6 acres located near the terminus of Vickilee Road in the County.  See Staff's Request Analysis And Recommendation ("Viridis Staff Report"), page 3 (Exhibit 3 to Amended Complaint). It is in the general vicinity of the intersection of Courthouse Road and Powhite Parkway.  In 2006, the County Board of Supervisors approved the request of the applicant, J. Mark Sowers, to rezone the Property from the Agricultural zoning classification to the Residential (R-12) classification.  (Board of Supervisors' Minutes for August 23, 2006, Zoning Case 06SN0127,

page 06-788) (Exhibit 2 to Amended Complaint).  As rezoned in 2006, the Property could be developed as a 49 unit residential subdivision.  (Amended Complaint, ¶¶ 14, 20).[3]

As part of the 2006 rezoning, the previous owner voluntarily proffered cash to help mitigate the impact of his proposed development on County capital facilities.  (Viridis Staff Report, Exhibit 3 to Amended Complaint, page 10).[4]  Those cash proffers offered by the applicant, and accepted by the Board of Supervisors, provided for a total payment of $11,225.00 per dwelling unit, allocated as follows: $3,836.00 for schools, $433.00 for parks and recreation, $6,415 for roads, $250.00 for libraries and $291.00 for fire stations.  (Amended Complaint, ¶ 25); (Board of Supervisors' Minutes, p. 06-789) (Exhibit 2 to Amended Complaint). Additionally, if the owner did not complete certain drainage improvements that would affect storm water flooding of properties to the south, the total cash proffer would increase to $15,600 per dwelling unit. (Amended Complaint, ¶¶ 20, 21, 22); (Board of Supervisors' Minutes, pgs. 06-789 and 06-790 and -791) (Exhibit 2 to Amended Complaint).  Viridis concedes that storm drainage from its project would detrimentally contribute to the existing flooding problem for properties south of its development. (Amended Complaint, ¶¶ 21, 22).

In 2008, Viridis purchased the Property as zoned and subject to the cash proffers which had been proffered in 2006.  (Amended Complaint, ¶¶ 10, 14, 25).  Viridis does not contend, nor

---

[3] The original Complaint alleged that the 2006 rezoning allowed a 48 unit residential subdivision. (Original Complaint, ¶ 14).  As indicated by the Viridis Staff Report, page 11, the 2006 zoning and subsequently approved subdivision plats allow 49 lots, two of which are portions of two lots from a development to the south that extend part way into the Property.  The rezoning application filed by Viridis in 2012 sought to increase the allowable lots to 50 lots.  Id.

[4] Once accepted by the Board of Supervisors, proffered conditions become an integral part of the zoning ordinance itself.  Gregory v. Board of Supervisors of Chesterfield County, 257 Va. 530, 536, 514 S.E.2d 350, 354 (1999) ("a landowner is permitted…to submit voluntary written proffers…as part of the landowner's proposed amendment to the zoning ordinance").

could it legitimately contend, that it was unaware of the conditions of the 2006 rezoning, including the cash proffers made by the previous owner, when Viridis purchased the Property.

In 2012, Viridis filed a rezoning application seeking to increase the density of its development and to eliminate the 2006 cash proffers voluntarily proffered by the prior owner. (Amended Complaint, ¶ 26). The public hearing on Viridis' application was continued a number of times with Viridis' consent. (Viridis Staff Report, pgs. 12-16) (Exhibit 3 to Amended Complaint). On July 23, 2014, the Board of Supervisors held a public hearing on the application. (Amended Complaint, ¶ 34). County Staff recommended that the Board deny Viridis' request to eliminate the existing cash proffers because its application "does not mitigate the impacts of this development on school, park, library and fire station facilities, thereby not ensuring adequate service levels are maintained and protecting the health, safety and welfare of County citizens." (Viridis Staff Report, pg. 2) (Exhibit 3 to Amended Complaint).

The County's Cash Proffer Policy (Exhibit 1 to Amended Complaint), expressly provides that a zoning applicant is not required to make cash proffers in order to address the impact of his development, but that land or in-kind improvements may be proffered instead if the applicant chooses. (Cash Proffer Policy, ¶ A1). Ultimately, "the Board will consider  health, safety and welfare issues" as well as "measures taken by the zoning applicants to address their impacts on capital facilities" when the Board decides a zoning case. Id.  In accordance with this Policy, the Viridis Staff Report recommended that the Board not eliminate the cash proffers which were accepted as part of the 2006 rezoning, but only because Viridis' request did not otherwise address the impact of its development on public facilities, noting that the "request falls short of

adequately addressing the proposed development's impact on school, park, library and fires [sic] station facilities. (Amended Complaint, Exhibit 3, p. 12).[5]

County Staff also addressed drainage and erosion problems related to Viridis' development, including concerns as to "the level of flood protection afforded by the presently proposed on site and downstream improvements…" (Viridis Staff Report, pg. 4) (Exhibit 3 to Amended Complaint).  As the Viridis Staff Report explained, there are "many off-site drainage problems for that portion of the property that drains to the south."  Id.  The drainage solution that had been proposed for the development "has little or no margin" and the addition of impervious surfaces from the proposed additional lots would result in the invalidation of the existing drainage plan because "with any additional density, the existing design will not meet the conditions of the previous zoning and subdivision requirements."  Id.

After conducting the public hearing, the Board of Supervisors voted to deny Viridis' rezoning application.  (Amended Complaint, ¶ 34).   Viridis makes a number of conclusory allegations in its Amended Complaint about (i) the motion made by Supervisor Art Warren to deny the application, (ii) the comments of Mr. Warren and other Supervisors, and (iii) comments of County staff.   (Amended Complaint, ¶¶  34, 35, 36).  Fortunately, it is not necessary to accept these conclusory allegations at face value.  Viridis explicitly incorporated by reference into its Amended Complaint an internet link to the County's website where the video of the entire Board of Supervisors' public hearing on Viridis' rezoning application can be viewed.  (Amended

---

[5] Conditions that address the impact of development on public facilities cannot be imposed by the locality, but must be voluntarily proffered by the applicant in able for the locality to accept them as zoning conditions. Va. Code § 15.2-2298.  Thus, when Viridis proposed to eliminate the 2006 cash proffers for schools, libraries, parks, and fire stations, the County could not propose alternative means to address the impact on these facilities, only Viridis could do so.  Id.

Complaint, ¶ 35).[6]   Although Viridis attempts to restrict the Court's consideration to a selected portion of Supervisor Warren's comments (Amended Complaint, ¶ 35), the entirety of the hearing is available and, in the interest of completeness, should be reviewed by the Court.  <u>See</u> Fed. Rule Evidence 106;[7] <u>see</u> <u>also</u> <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999) (documents outside of the complaint may be considered by the court upon a motion to dismiss if "integral to and explicitly relied on in the complaint").

Viridis alleges that the Board rejected Viridis' rezoning request "because Viridis refused to pay maximum cash proffers."  (Amended Complaint, ¶ 34).  Yet, Viridis itself acknowledges that Mr. Warren's motion to deny the application noted not that Viridis had refused to pay a full cash proffer but, instead, that Viridis had "failed to address the project's impact on capital facilities…" (Amended Complaint, ¶ 35).

Mr. Warren stated that the County calculates the impact of each residential development on County facilities such as schools, parks, libraries, fire stations and roads and that,  in order to ensure the health, safety and welfare of County residents, developers must, under Virginia zoning law, choose how they will account for the impact of their development on these public facilities.  He emphasized that a zoning applicant "does not have to make a cash proffer" and that cash proffers are just one of many ways that an applicant can choose to account for the impact of

---

[6] The video of the entire Viridis public hearing can be found beginning at 01:26:16 at the following link:  http://chesterfieldva.granicus.com/MediaPlayer.php?view_id=6&clip_id=1068

[7] "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  <u>See</u> FRE 106.  The purpose of the Rule is to allow contemporaneous introduction of written or recorded statements that place in context other writings or recorded statements admitted into evidence which, viewed alone, may be misleading.  <u>United States v. Jamar</u>, 561 F.2d 1103, 1108 (4th Cir. 1977).

its development.[8]  He noted that Viridis argued that its development will have no impact on schools, parks, fire stations, or libraries, but that Viridis focused "only on the closest facilities to the development".  He also pointed out that Viridis ignored the fact that "each resident has an impact which is cumulative to the impact of every other resident."  He also stated there is no reason to believe that no residents living in Viridis' residential development, as opposed to the residents living in every other development in the County, will have any impact on a County facility.  He concluded that Viridis proposed rezoning would, in fact, not account for the impact of its development on County facilities.  He further stated he was concerned with the drainage and flooding impact that would occur downstream if the density of development on the Viridis site increased.  (Board video, 02:28:42 through 02:34:50).

Supervisor Dan Gecker emphasized that "land use still does matter" in a zoning case and expressed reservations as to whether Viridis' proposal was truly in conformity with the County's Comprehensive Plan, specifically the "spirit and intent" of the applicable Northern Courthouse Road Plan.  He also had concerns with density, questioning "the appropriateness of putting 50 lots onto this piece of property."  He noted that the "drainage and erosion problems noted in the staff report are significant."  He raised questions about water quality issues and the need for "higher quality" development.  Mr. Gecker concluded that, from his perspective, this was "not a case about proffers" but whether the proposal represented the "character of development" that is needed in the area off Courthouse Road in 2014.  (Board video, 02:19:33 through 02:25:54).

---

[8] Mr. Warren's observation is consistent with the finding of the trial court, affirmed by the Virginia Supreme Court in Gregory v. Board of Supervisors of Chesterfield County, 257 Va. 530, 537, 514 S.E.2d 350, 354 (1999), that the Board of Supervisors did not deny the plaintiff's rezoning application solely due to the absence of cash proffers but that there was ample evidence supporting the Board's denial based on health, safety, and welfare concerns.

Supervisor Jim Holland indicated that the Board "should focus on County-wide" infrastructure needs rather than needs within a single area. He noted that Viridis did not mitigate the impacts of its development on County facilities.  (Board video, 2:26:03 through 2:27:10).

Mr. Warren made a motion that, for all these reasons as well as the reasons stated by County Staff, Viridis' rezoning application should be denied.  The vote was 4-0 in favor of denying the application with one abstention by Supervisor Dorothy Jaeckle who noted that her vote to abstain was due to the issue of the developer failing to address quality standards.  (Board video, 2:35:14 through 2:36:08).

## STANDARD OF REVIEW

### A.    Rule 12(b)(1) Motion

For a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence.  Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir.1999).   The court accepts all well-pleaded factual allegations as true, but is not obligated to accept a plaintiff's legal arguments or conclusions.  Glenn v. Lafon, 427 F.Supp.2d 675, 677 (W.D.Va. 2006)  The court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Evans, 166 F.3d at 647.  Indeed, the court weighs the evidence to determine its jurisdiction.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

### B.    Rule 12(b)(6) Motion

In reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts the allegations of the Amended Complaint, including exhibits attached to or referenced, as true to determine if the plaintiff might be entitled to relief.  Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (table decision); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (documents outside of a complaint may be considered by the court on a motion to dismiss if "integral to and

explicitly relied on in the complaint").  This balances a plaintiff's right to notice of those matters which may properly be addressed by the Court and a defendant's right to test swiftly the legal soundness of the charges made against him.  <u>Gasner v. County of Dinwiddie</u>, 162 F.R.D. 280, 282 (E.D. Va. 1995), <u>aff'd</u>, 103 F. 3d 351 (4th Cir. 1996).  However, the Amended Complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).   A claim must contain "more than labels and conclusions" or a "formulaic recitation of the elements", <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), and must be "plausible on its face."  <u>Id.</u>, at 570.   Moreover, legal conclusions in the Amended Complaint are not accepted as true.  <u>Iqbal</u>, 556 U.S. at 679.

## <u>LEGAL ARGUMENT</u>

I. **The Court Should Dismiss Viridis' Claims For Declaratory And Injunctive Relief, And Stay Its Claim For Damages, Pursuant To The Abstention Principles Set Forth By The Supreme Court in Burford v. Sun Oil Company.**

The Fourth Circuit Court of Appeals has repeatedly emphasized that land use questions are the peculiar concern of local and state governments and that a federal court should not sit as a "zoning board of appeals" so as to intervene in local land use policy.  <u>MLC Automotive, LLC v. Town of Southern Pines</u>, 532 F.3d 269, 283-84 (4th Cir.  2008); <u>Pomponio v. Fauquier Cnty. Bd. of Supervisors</u>, 21 F.3d 1319, 1327 (4th Cir. 1994), <u>abrogated in part on other grounds by Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706 (1996); <u>Browning-Ferris, Inc. v. Baltimore County</u>, 774 F.2d 77, 79 (4th Cir. 1985).  Under the abstention doctrine enunciated in <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), a federal court should abstain from adjudicating a case where its decision may undermine "independence of state action" on matters that are local and important to a state's sovereignty.  Abstention advances the principles of federal and state comity

where an "incorrect federal decision" might disrupt significant state policies.  Town of Nags Head v. Toloczko, 728 F.3d 391, 395-96 (4th Cir. 2013).

The importance of abstention in the American "system of dual sovereignty cannot be underestimated." Johnson v. Collins Entertainment Co., 199 F.3d 710, 719 (4th Cir. 1999); Washington Gas Light Co. v. Prince George's County Council, 711 F.3d 412, 418 (4th Cir. 2013).  Abstention "safeguards our federal system from the delay, misunderstanding of local law, and needless conflict with a state policy that inevitably result from federal judicial intrusions into areas of core state prerogative."  Johnson, 199 F.3d at 719 (punctuation deleted).

Under Burford, it is appropriate for a federal district court to abstain when there are "difficult questions of state law" bearing on policy problems of substantial public import or when the exercise of federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  Town of Nags Head, 728 F.3d at 396 quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989).  "The Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems... Principles of federalism and comity require no less." Johnson, 199 F.3d at 719 (citation omitted).

Zoning and land use cases "characteristically meet the Burford abstention criteria." Town of Nags Head, 728 F.3d at 396.  Indeed, the Fourth Circuit has "traditionally viewed questions of state and local land use and zoning law as the paradigm of Burford abstention."  Id. at 396 (emphasis added).  Such cases are "a classic example of situations in which the exercise of federal review ... would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  Id.; Pomponio, 21 F.3d at 1327.  Accordingly, the federal courts "should not leave their indelible print on local and state land use and zoning laws

by … sitting as a zoning board of appeals." Pomponio, 21 F.3d at 1327; MLC Automotive, 532 F.3d at 282. Thus, where a plaintiff's federal claims stem solely from construction of state or local land use or zoning law, the federal courts should abstain to avoid interference with those local land use policies. Washington Gas, 711 F.3d at 419; MLC Automotive, 532 F.3d at 282.

Moreover, the Fourth Circuit has consistently found that Burford abstention is appropriate when the claim is really "state law in federal law clothing." MLC Automotive, 532 F.3d at 282; Johnson, 199 F.3d at 721. As the Fourth Circuit stated when reviewing the history of its abstention cases, "[v]irtually all of these cases, when stripped of the cloak of their federal constitutional claims, are state law cases. The federal claims are really state law claims because it is either the zoning or land use decision, decisional processes, or laws that are the bases for the plaintiffs' federal claims." Pomponio, 21 F.3d at 1326. In most of these cases, the federal claims could not be untangled from the state or local zoning or land use law. Id. at 1327. Thus, "a district court should abstain … in cases arising solely out of state or local zoning or land use law, despite attempts to disguise the issues as federal claims." Id.

The U.S. District Courts in Virginia have followed the Fourth Circuit's instructions regarding abstention from deciding land use cases brought in federal court. For example, in N. Va. Law Sch., Inc. v. City of Alexandria, 680 F. Supp. 222 (E.D.Va. 1988), the city denied the plaintiff's application to rezone its property from residential to commercial. The plaintiff sued in federal court claiming, as Viridis does here, that this denial constituted a taking of its property without compensation in violation of the Fifth Amendment. The District Court noted that "[l]and use planning…is an area of uniquely local concern and, in Virginia, is the subject of an extensive regulatory scheme…[that] includes provisions for challenging zoning decisions." Id. at 226. It then observed that Virginia courts are "in a better position" to delineate the boundaries

of local discretion in the area of land use" and that for the federal court to "sit as a board of zoning appeals from actions by a local city council and circumscribe local power with respect to special use permits" would cause "needless conflict". Id. at 226, quoting Fralin & Waldron, Inc. v. City of Martinsville, 370 F. Supp. 185, 191 (W.D. Va 1973), affirmed, 493 F.2d 481 (4th Cir. 1974).[9] The District Court concluded that abstention was appropriate because "Virginia state courts should consider plaintiff's allegations before this Court addresses any federal constitutional issues which may be involved." 680 F. Supp. at 227.

Here, Viridis challenges the Board of Supervisors' denial of Viridis' rezoning application that sought to remove cash proffers agreed to by the prior owner during the 2006 rezoning. Those conditions were designed to address the impact of the parcel's development on County infrastructure such as schools, fire stations, parks, and libraries. See County Cash Proffer Policy, Exhibit 1 to Amended Complaint, ¶ 7 ("The following public facilities will be funded by cash proffers: schools, roads, parks, libraries, and fire stations."); Board of Supervisors' Minutes for August 23, 2006, Exhibit 2 to Amended Complaint, Zoning Case 06SN0127, Cash Proffer 2 (providing for payment of cash proffers relating to schools, parks and recreation, roads, libraries, and fires stations). Addressing these impacts through zoning is a legitimate state interest that bears on important and substantial state policies, as demonstrated by Virginia's land use and zoning statutes. See, e.g., Va. Code §§ 15.2-2200 through 15.2-2329.

Indeed, both this Court and the Fourth Circuit have recognized that Chesterfield County's

---

[9] In Pomponio, 21 F.3d at 1326, the Fourth Circuit recognized that Fralin appeared to be its first case in this area. There, the plaintiff sued the city over the refusal to grant it a special use permit or approve its subdivision plan. The Fourth Circuit held that abstention was appropriate because "the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them." 493 F.2d at 482-83. See also Caleb Stowe Associates, Ltd. v. County of Albemarle, Va., 724 F.2d 1079, 1080 (4th Cir. 1984) (citing Fralin as grounds for abstention and noting that the plaintiffs' claims depended on interpretation of state and local land use law, zoning practices and procedures).

Cash Proffer Policy advances the legitimate state interest of funding County capital improvements. National Association of Home Builders of the United States v. Chesterfield County (hereinafter "NAHB"), 907 F. Supp. 166, 168 (E.D.Va. 1995) (In a facial challenge to the County's Cash Proffer Policy, the Court found that "[t]he Policy at issue is designed to provide for the capital improvements required by development in the County. It is not disputed that this is a legitimate state interest."), affirmed, 92 F.3d 1180 (4th Circ. 1996) (table decision), cert. denied, 519 U.S. 1056 (1997).   The Board of Supervisors' denial of Viridis' rezoning application was also based on the highly localized concern that the impact of Viridis' development would contribute to drainage and flooding problems downstream.   This Court should exercise its discretion and abstain from deciding this local zoning dispute involving local and state concerns.[10]

Further, Count II of the Amended Complaint raises issues solely of state and local concern, contending that the County's Cash Proffer Policy is *ultra vires* and unconstitutional under the Virginia Constitution.   Viridis' claim for damages and attorneys' fees under Va. Code § 15.2-2208.1, enacted by the General Assembly in 2014, also presents difficult questions of state law as to whether the remedy is even available outside of the local state circuit court.[11]

Since Burford abstention is appropriate, the District Court can also dismiss those claims where the relief sought is equitable or otherwise discretionary.   Although it cannot dismiss a

---

[10] A plaintiff can also attack the constitutionality of a zoning decision in state court as part of its claim that the decision is arbitrary and capricious.

[11]   The statute requires such claims to be brought in the local Virginia circuit court.   As the Fourth Circuit observed in Fourth Quarter Properties IV, Inc. v. City of Concord, N.C., 127 Fed. Appx. 648 (4th Cir. 2005) (table decision), "We are presented solely with the issue of whether, under state zoning law, Concord's actions toward Fourth Quarter obligate it to pay damages to Fourth Quarter.   As our precedent holds, that issue is uniquely suited for Burford abstention…"

claim seeking damages, it can enter a stay to await conclusion of state proceedings.  <u>Front Royal</u> <u>& Warren County Indus. Park Corp. v. Town of Front Royal, Virginia</u>, 135 F.3d 275, 282 (4th Cir. 1998).  "Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts…Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes."  <u>Sylvia Dev. Corp. v. Calvert County, Md</u>., 48 F.3d 810, 828-29 (4th Cir. 1995).  For all of the reasons addressed above, this Court should abstain from deciding the important state and local land use questions at issue in this case and, under <u>Burford</u>, dismiss and/or stay this case.

> **II.**     **The Court Should Dismiss Viridis' Federal Takings Claim (Count I) For Viridis' Failure To First Avail Itself Of Virginia Procedures For Seeking Just Compensation As Required By The Supreme Court In Williamson County Reg. Plann. Comm. v. Hamilton Bank of Johnson City.**

In Count I of its Amended Complaint, Viridis alleges that the Board of Supervisors' denial of its rezoning application violated the Takings Clause of the Fifth Amendment of the Constitution.  Viridis cites to the Supreme Court's recent decision of <u>Koontz v. St. Johns River</u> <u>Water Management District</u>, 570 U.S. __, 133 S. Ct. 2586 (2013), wherein the Court extended the "nexus" and "rough proportionality" tests of <u>Nollan v. California Coastal Comm'n</u>, 483 U.S. 825 (1987) and <u>Dolan v. City of Tigard</u>, 512 U.S. 374 (1994) to cases where a locality denies a land use permit due to the applicant's failure to agree to allegedly unconstitutional demands.  As addressed in Section III below, Viridis' Fifth Amendment claim under <u>Koontz</u> fails because the Board of Supervisors' denial of Viridis' rezoning application satisfied, as a matter of law, the nexus and rough proportionality tests required by <u>Koontz</u>.

However, Viridis' Fifth Amendment claim <u>also</u> appears to allege that the Board of Supervisors actually took Viridis' property without just compensation by refusing to delete the

existing cash proffers agreed to by the prior owner in the 2006 rezoning.  (Amended Complaint, ¶¶ 25, 26, 29, 33, 34); cf. id. ¶ 49 (alleging in Count II an unconstitutional taking under Virginia Constitution and law).  To the extent that Viridis is making such a claim, the Court must dismiss it due to Viridis' failure to first seek compensation in Virginia state courts.  Williamson County Reg. Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).[12]

Under Williamson County, there are two hurdles to a claim for just compensation for a regulatory taking brought against a local government in   federal court.  First, the plaintiff must have a final decision regarding the application of the regulations to his property.  Second, if the state provides an adequate procedure for seeking just compensation, the plaintiff cannot assert a violation of the Takings Clause in federal court until it has used the procedure in state court and been denied just compensation.  Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d 404, 406-07 (4th Cir. 2007) (holding that since South Carolina allows inverse condemnation claims for regulatory takings, the plaintiff was obligated to avail himself of such state court procedures).  The reason for this is because the Takings Clause requires the payment of just compensation, but not necessarily payment before or simultaneous with the taking.  Sansotta v. Town of Nags Head, 724 F.3d 533, 544   (4th Cir. 2013); Williamson County, 473 U.S. at 194.  Thus, "to satisfy Williamson County, plaintiffs must not only file a state law inverse condemnation claim—they must also be denied just compensation through a final adjudication in state court."   Town of Nags Head v. Toloczko, 728 F.3d at 399; Express Carwash of Charlottesville, L.L.L.P. v. City of Charlottesville, 320 F. Supp.2d 466 (W.D. Va. 2004) (applying Williamson County to dismiss claim for failure to first seek compensation in state

---

[12] Such a claim, challenging the 2006 rezoning as an unconstitutional taking, would also be subject to dismissal on statute of limitations grounds.  See Va. Code §15.2-2285(F).

court); HMK Corp. v. County of Chesterfield, 616 F. Supp. 667 (E.D. Va. 1985) (dismissing case under Williamson County). Viridis has brought no such claim in state court.

Viridis cannot escape the Williamson County requirement simply because it is alleging a Nollan/Dolan claim under Koontz. It still must seek compensation in the Virginia courts prior to bringing this claim in federal court. As the Tenth Circuit Court of Appeals has noted, "Nollan and Dolan do not authorize challenges to permitting decisions as alleged unconstitutional takings without first seeking compensation if the state has provided the means to seek compensation…they cannot be the source to create a new breed of facial challenges that can be brought in federal court without regard to the Williamson County requirements." Alto Eldorado Partnership v. County of Santa Fe, 634 F.3d 1170, 1179 (10th Cir. 2011), cert. denied, 132 S. Ct. 246 (2011). See also Paramount Contractors & Developers, Inc. v. City of Los Angeles, 805 F.Supp.2d 977, 1004 (C.D. Cal. 2011) (a claim under Nollan/Dolan is subject to the Williamson County requirements as to compensation through state procedures), affirmed, 516 Fed. Appx. 614 (9th Cir. 1013) (table decision), cert. denied, 134 S. Ct. 907 (2014).

Virginia law provides remedies for land owners to obtain compensation for governmental takings, including claims for inverse condemnation, pursuant to Virginia's declaratory judgment statute. Richmeade, L.P. v. City of Richmond, 267 Va. 598, 594 S.E.2d 606 (2004); see also Kitchen v. City of Newport News, 485 F. Supp.2d 691, 693 (E.D. Va. 2007) (citing Va. Const., Article I, § 11 and Va. Code §§ 8.01-184 and -187); N. Va. Law Sch., Inc. v. City of Alexandria, 680 F. Supp. 222, 224 (E.D.Va. 1988). Because Viridis has not secured a final state judgment denying it just compensation for the alleged taking of its property due to the 2006 rezoning, Viridis' takings claim is not ripe under Williamson County and must be dismissed. See Kitchen, 485 F. Supp.2d at 693-94; N. Va. Law Sch., 680 F. Supp at 225.

### III.    The Court Must Dismiss Viridis' Fifth Amendment Takings Count For Failure To State A Claim On Which Relief Can Be Granted To Viridis.

Citing <u>Koontz v. St. Johns River Water Management District</u>, 570 U.S. __, 133 S. Ct. 2586 (2013), Viridis alleges that the Board of Supervisors' denial of its rezoning request violated the Takings Clause of the Fifth Amendment of the Constitution.  (Amended Complaint, ¶ ¶ 38-41).    In <u>Koontz</u>, the Supreme Court recognized that "many proposed land uses threaten to impose costs on the public" and that it is a "hallmark of responsible land-use policy" for localities to insist that such landowners "internalize the negative externalities of their conduct." 133 S.Ct. at 2595.  Although localities may insist that applicants "bear the full cost of their proposals", the government cannot engage in     "out-and-out…extortion" that would thwart the protections of the Fifth Amendment.  The Supreme Court confirmed that the constitutionality of such claims are judged according to the "nexus" and "rough proportionality" tests set forth in <u>Nollan</u> and <u>Dolan</u> that allows the government "to condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property the government demands and the social costs of the applicant's proposal." 133 S.Ct. at 2595.  The Supreme Court further confirmed that in cases where the government denies a permit, as opposed to approving a permit subject to extortionate demands, a denial of a permit based on an unconstitutional demand also runs afoul of the Takings Clause-- not because property has been taken, but because such demands constitute an impermissible burden on the right not to have property taken without compensation.  133 S. Ct. at 2596-97.

Although the Supreme Court's application in <u>Koontz</u> of the <u>Nollan/Dolan</u> principles to a permit denial is new, the "nexus" and "rough proportionality" tests are established law.  This very Court applied the same tests eighteen years ago when a developers' association challenged the County's cash proffer policy.  The Court held that the County's Cash Proffer Policy did not

18

constitute a facial taking of the plaintiffs' property in violation of the Fifth Amendment because it did not deprive the property of "all economically beneficial use". <u>NAHB</u>, 907 F. Supp. at 167. Citing <u>Nollan</u> and <u>Dolan</u>, the Court then examined whether there was an "essential nexus" between the exaction and a legitimate state interest and whether there was a "rough proportionality" to that nexus. <u>Id</u>. at 168. It recognized that the County's Cash Proffer Policy was designed to provide for capital improvements that are required as a result of development and that "this is a legitimate state interest." <u>Id</u>. It emphasized that "rough proportionality" does not equate to a "precise mathematical calculation". <u>Id</u>. Finally, it concluded that the Cash Proffer Policy, on its face, satisfied the "rough proportionality" test. Id. at 168-69. In reaching this conclusion, the Court made a number of observations about the County's Cash Proffer Policy, observations that are equally applicable today with respect to the County's current Cash Proffer Policy. <u>Id</u>. at 168. See chart below:

| **Cash Proffer Policy In 1995**<br>**(District Court in NAHB)** | **Current Cash Proffer Policy**<br>**(Exhibit 1 to Complaint)** |
|---|---|
| 1. Zoning Ordinance § 21.1-8 authorizes County to accept cash proffers. <u>NAHB</u>, 907 F. Supp. at 168. | 1. Zoning Ordinance § 19-12 authorizes the County to accept cash proffers. |
| 2. Cash Proffer Policy used by Board of Supervisors to guide acceptance of proffers. <u>Id</u>. | 2. Cash Proffer Policy used by Board of Supervisors to guide acceptance of proffers. (Policy, ¶ A1) |
| 3. Cash Proffer Policy is applicable to all residential zoning requests. <u>Id</u>. | 3. Cash Proffer Policy is applicable to all residential zoning requests. (Policy, ¶ A1) |
| 4. Cash Proffer Policy involves five components to calculate what a new home will cost the County in providing public facilities such as schools, roads, parks, etc. <u>Id</u>. | 4. Cash Proffer Policy involves five components to calculate what a new home will cost the County in providing public facilities such as schools, roads, parks, etc. (Policy, ¶¶ A7, B1 ) |
| 5. Some calculations are based on county-wide averages. <u>Id</u>. | 5. Some calculations are based on county-wide averages. (Policy, ¶ A5 ) |

19

| | |
|---|---|
| 6. Some calculations are based on units smaller than county-wide averages. <u>Id</u>. | 6. Some calculations are based on units smaller than county-wide averages. (Policy, ¶ A6  ) |
| 7. "Maximum Cash Proffer" determined. <u>Id</u>. | 7. "Maximum Cash Proffer" determined. (Policy, ¶ A3) |
| 8. Maximum cash proffer of $ 5,083 per lot, plus indexed amount for payments after certain date. <u>Id</u>. | 8. Maximum cash proffer of $ 18,966 per lot, plus indexed amount for payments after certain date.  (Policy, ¶ B10 ) |

There are no significant differences between the County's Cash Proffer Policy in 1995 and the current Cash Proffer Policy; the factors which the District Court in <u>NAHB</u> considered to be pertinent for its "nexus" and "rough proportionality" analysis are equally pertinent to this case.  (The only distinction is the increase in the maximum cash proffer which is explained by the increase in construction costs and materials over the intervening 19 years).  As the Fourth Circuit noted on appeal, the "cash proffer policy utilizes a complex methodology that is designed to calculate the average impact of a new residential development in terms of the County's cost of providing new public facilities such as schools, roads, libraries and parks….[T]here is no reason apparent on the face of the policy why any proffer could not be determined in an amount roughly proportional to the impact of the proposed development."  <u>NAHB</u>,  92 F.3d 1180.

In an apparent attempt to skirt around <u>NAHB</u>, Viridis alleges that there is no "essential nexus" or "rough proportionality" between the impact of Viridis' development on schools and cash proffer payments because the schools in the service district where Viridis' development is located "are under capacity" and "no new schools are scheduled to be built or expanded in that district".  (Amended Complaint, ¶ 40(c)).  Viridis makes the same argument as to parks, libraries, and fire stations, alleging that the County plans "no such facilities to be built" in those districts.  (Amended Complaint, ¶ 40(g)).  Even if Viridis' allegations are taken as true for the present motions, the argument misses the mark.  By rejecting the County's calculations (which are based

on averaging <u>County-wide</u> criteria instead of purely "local" impacts), Viridis insists that the County establish "exact proportionality" instead of "rough proportionality" required by law.

The Fourth Circuit rejected this same argument in <u>NAHB</u>.  The plaintiff there argued, as does Viridis, that "rough proportionality" requires a more stringent individualized determination than that presented by the County's Cash Proffer Policy.   The Fourth Circuit noted that the Cash Proffer Policy "utilizes a complex methodology that is designed to calculate the <u>average</u> <u>impact</u> of a new residential development in terms of the County's cost of providing new public facilities such as schools, roads, libraries and parks."  92 F.3d 1180 (emphasis added).  Significantly, the County's approach in averaging impacts did not violate constitutional mandates.  The Fourth Circuit affirmed the District Court's ruling that the Cash Proffer Policy was facially constitutional because there was no reason under the Policy's approach why a proffer could not be determined in an amount that is roughly proportional to the impact of a proposed development.  Thus, the Fourth Circuit held that the plaintiff's argument would result in an "exact proportionality" test which "clearly is not required under the Constitution, nor feasible in practice."  92 F.3d 1180.  The same observation applies to Viridis' pleadings in the present case.

Finally, the takings analysis includes a determination as to whether the government's actions actually interfered with the plaintiff's antecedent bundle of rights.  <u>Henry v. Jefferson County Commission</u>, 637 F.3d 269, 275 (4th Cir. 2011), <u>cert</u>. <u>denied</u>, 132 S. Ct. 399 (2011); <u>Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach</u>, 420 F.3d 322, 330 (4th Circ. 2005); <u>see also</u>  <u>Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal</u>, 135 F.3d 275, 285–86 (4th Cir.1998) (there is "no warrant for the proposition that where the government ... merely refuses to enhance the value of real property, a compensable taking has occurred").  Here, the nature and extent of Viridis' antecedent bundle of rights is framed by the 2006

rezoning case.  The Board of Supervisors 2014 denial of Viridis' request to amend the existing 2006 zoning of its property did not interfere with Viridis' antecedent bundle of rights—it left those rights intact under the 2006 zoning case.  At best, the Board merely refused to "enhance the value" of Viridis' Property when it denied Viridis' rezoning request due to Viridis' refusal to address the impacts of its development on public facilities.

Based on the foregoing, the Board of Supervisors' denial of Viridis' zoning request for failure to address its impact on public facilities satisfies the applicable nexus and rough proportionality requirements as a matter of law.  For these reasons, the Court should grant the Defendants' Rule 12(b)(6) motion and dismiss Count I of the Complaint.

**IV.    The Court Should Dismiss Viridis' Supplemental State Law Claim (And Its Claim For Damages Under Newly Enacted Va. Code § 15.2-2208.1) For Failure To State A Claim On Which Relief Can Be Granted To Viridis.**

In Counts II of its Amended Complaint, Viridis invokes the Supplemental Jurisdiction of this Court to allege a cause of action under Virginia law.  Count II alleges that the County's Cash Proffer Policy is *ultra vires* and unconstitutional under the Virginia Constitution.  As addressed below, the Court should dismiss Count II (as well as Viridis' claim for attorneys' fees and damages under Va. Code § 15.2-2208.1) for failure to state a claim upon which relief can be granted. In the alternative, with the federal Count I claim no longer in the case, the Court should exercise its discretion under 28 U.S.C. § 1367 to dismiss the remaining Virginia law claims.

**A.     The Court Should Dismiss State Law Count II For Failure To State A Claim On Which Relief Can Be Granted To Viridis.**

Count II alleges that the County's Cash Proffer Policy violates "Dillon's Rule", is *ultra vires,* and violates Article I, § 11 (taking without just compensation) and Article VII, § 2 of the Virginia Constitution which provides, among other things, that the General Assembly shall

provide by general law for the powers of local governments.[13]   Specifically, Count II contends

that Va. Code § 15.2-2298 provides only for cash proffers in the context of off-site transportation

improvements and does not authorize the County to accept cash proffers relating to schools,

parks and recreation, public safety and libraries.  Viridis' claim is without merit.

In pertinent part, Va. Code § 15.2-2298 states as follows:

> a zoning ordinance may include and provide for the voluntary proffering in
> writing, by the owner, of reasonable conditions…as a part of a rezoning or
> amendment to a zoning map, provided that (i) the rezoning itself gives rise to the
> need for the conditions; (ii) the conditions have a reasonable relation to the
> rezoning; and (iii) all conditions are in conformity with the comprehensive plan as
> defined in § 15.2-2223.  [Emphasis added].

On its face, the language of Va. Code § 15.2-2298 does not restrict a local government's

acceptance of proffered conditions solely to transportation improvements.[14]  In Gregory v. Board

of Supervisors of Chesterfield County, 257 Va. 530, 514 S.E.2d 350 (1999), the Virginia

Supreme Court specifically found that "reasonable conditions" included cash proffers for roads,

parks, fire stations, and libraries.  The Court noted that the County had adopted a written policy

regarding cash proffers and that the policy "set out a methodology for calculating the cost to the

County of providing public facilities for each new residence in a proposed subdivision, including

schools, roads, parks, libraries and fire stations."  Id. at 533, 514 S.E.2d at 351.  It then rejected

the plaintiff's argument that the Board of Supervisors had imposed a proffer requirement

---

[13] Under Dillon's Rule, a locality can exercise all of the following powers: (i) those expressly
granted; (ii) those necessarily or fairly implied in or incidental to the powers expressly granted
and (iii) those essential to the purposes of the locality, not simply convenient but indispensable.
Board of Supervisors v. Town of Purcellville, 276 Va. 419, 437, 666 S.E.2d 512, 520-21 (2008).

[14] Viridis misreads language in Va. Code § 15.2-2298 stating that "[r]easonable conditions may
include the payment of cash for any off-site road improvement or any off-site transportation
improvement" (emphasis added) as forbidding a locality to accept cash proffers that do not relate
to transportation.  The purpose of this language is to ensure that localities can accept cash to
address off-site transportation impacts, not to restrict the types of  infrastructure eligible for cash
proffers.  It is an additional grant of authority regarding off-site facilities, not a restriction on the
broad grant of authority to accept cash as previously set forth in Va. Code § 15.2-2298.

contrary to the requirements of Va. Code § 15.2-2298, agreeing instead with the Board's contention that its decision was based on "legitimate and mandatory considerations of public health, safety, and welfare."  Id. at 536, 514 S.E.2d at 354.  See also NAHB, 907 F. Supp. 166; Patrick v. McHale, 54 Va. Cir. 67 (Chesterfield County Cir. Ct. 2000) (holding that Va. Code §§ 15.2-2297 and -2298 allow Chesterfield County to accept proffered conditions to alleviate the impact on public services and to accept cash proffers to offset the cost associated with upgrading public facilities to accommodate new zoning).

The County's authority to accept cash proffers to mitigate a proposed development's impact on schools, parks, fire stations, and libraries is not an open question under Virginia law. The fact that Va. Code § 15.2-2298 both contemplates and authorizes localities to accept voluntary cash proffers relating to these types of public infrastructure is also illustrated by Va. Code § 15.2-2303.2 which provides that localities that have accepted cash proffer payments pursuant to Va. Code § 15.2-2298 must make an annual report to the Commission on Local Government setting forth certain information about the cash proffers including, among other things, the specific categories of the expenditures, including specifically the categories of "schools, "fire and rescue/public safety", "libraries" and "parks, recreation, and open space".

As demonstrated above, and contrary to the allegations of the Amended Complaint, the County is authorized by Virginia law to accept cash proffer conditions that address impacts on public facilities other than transportation.  Based on the foregoing, the Court should grant the Defendants' Rule 12(b)(6) motion and dismiss Count II.

**B.    The Court Should Dismiss Viridis' Claim Under Va. Code § 15.2-2208.1 For Failure To State A Claim On Which Relief Can Be Granted To Viridis.**

Viridis makes a claim under Va. Code § 15.2-2208.1 that was enacted by the General Assembly in 2014.  (Amended Complaint, ¶ 52).   The statute provides for damages and

attorneys' fees against a local government when an applicant has been granted or denied a land use permit based on conditions that violate the Federal or Virginia Constitutions.   It also establishes legal presumptions that shift the burden of proof as to whether an unconstitutional condition was the controlling basis for the locality's actions on the permit.   It also provides that:

> Any action brought pursuant to this section shall be filed with the circuit court having jurisdiction of the land affected .. provided that such action is filed within the time limit set forth in subsection C or D of § 15.2-2259, subsection D or E of § 15.2-2260, or subsection F of § 15.2-2285, as may be applicable.

Va. Code § 15.2-2208.1 (emphasis added).   Accordingly, the statute requires that "any action brought pursuant to this section" be filed in the local circuit court which, in this instance, would be the Circuit Court for Chesterfield County.   Because by its very terms the statute is not available in Federal Court, this claim should be dismissed as a matter of law.

### C.   This Court Should Exercise Its Discretion To Dismiss Count II And Viridis' Claim Under Va. Code § 15.2-2208.1 As State Law Claims That Are Best Resolved In The Virginia Courts.

As addressed above, this Court should dismiss Count II and the Va. Code § 15.2-2208.1 claim per Rule 12(b)(6).   In the alternative, the Court should exercise its discretion under 28 U.S.C. § 1367 to dismiss the case without prejudice to allow Virginia courts the first opportunity to rule on the Virginia Constitution claims and this newly enacted Virginia remedies statute.

Federal courts have "wide latitude" under 28 U.S.C. § 1367 in the exercise of their discretion as to whether to retain or dismiss state law claims when the federal basis for an action has fallen away.   Shanaghan v. Cahill, 58 F.3d 106, 110   (4th Cir. 1995).   Pertinent factors that inform a court's decision include convenience and fairness to the parties, underlying issues of federal policy, comity, and judicial economy.   Id.   The existence of significant issues of state law best resolved in state court is also pertinent.   Id. at 112.   Here, Count II alleges violations of the Virginia Constitution and involves construction of a Virginia statute.   The claim also

involves application of Virginia and County zoning law to a particular parcel of land in

Chesterfield County, a matter which is peculiarly local in nature. Under these circumstances, this

Court should exercise its discretion not to decide these issues of state and local law and, thus,

dismiss Counts II and the claim under Va. Code § 15.2-2208.1.

<u>**CONCLUSION**</u>

In a similar land use dispute filed in federal court, the Fourth Circuit Court of Appeals

made the following observations which are equally pertinent to Viridis' zoning challenge:

> The case involves at bottom nothing more than a would-be developer's failure to get all he wanted in a local land-use dispute….
>
> Holding that federal takings claims arise in circumstances such as these would operate to extinguish the Tocquevillian remnants of our democracy, to hamstring local land-use policymakers in the discharge of their duties, and to endanger the character and quality of the communities they serve. It would upset the proper balance between judicial and representative decisionmaking. And it would displace state primacy in land-use policy with a constitutional common law of zoning. This we will not do.

<u>Henry v. Jefferson County Commission</u>, 637 F.3d 269, 279-80 (4th Cir. 2011), <u>cert</u>. <u>denied</u>, 132

S. Ct. 399 (2011).  Neither should this Court allow Viridis to treat this eminently local land use

dispute like it is a federal case.  For all these reasons, the Defendants request that the Court grant

its motions under Rule 12 of the Federal Rules of Civil Procedure and that they be granted such

other and further relief as the Court deems appropriate.

BOARD OF SUPERVISORS OF CHESTERFIELD
COUNTY, VIRGINIA, et al.


By: _____/s/_____
                  Counsel

Jeffrey L. Mincks, VSB #18317
County Attorney
Counsel for Defendants
P. O. Box 40
Chesterfield, VA  23832
Telephone (804) 748-1491
Facsimile (804) 717-6297
mincksj@chesterfield.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2014, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:Memo

    Wyatt B. Durrette, Jr., Esquire (VSB #04719)
    Robert R. Gordon, Esquire (VSB #18711)
    Bruce E. Arkema, Esquire (VSB #18625)
    Barrett E. Pope, Esquire (VSB #20574)
    DurretteCrump PLC
    1111 East Main Street, 16th Floor
    Richmond, Virginia 23219
    Telephone: (804) 775-6900
    Facsimile: (804) 775-6911
    wdurrette@durrettecrump.com
    rgordon@durrettecrump.com
    barkema@durrettecrump.com
    bpope@durrettecrump.com

                         By:    _____/s/_____
                                Jeffrey L. Mincks, VSB #18317
                                County Attorney
                                Counsel for Defendants
                                P. O. Box 40
                                Chesterfield, VA  23832
                                Telephone (804) 748-1491
                                Facsimile (804) 717-6297
                                mincksj@chesterfield.gov
                                Counsel for Board of Supervisors of
                                Chesterfield County, Virginia, et al.