IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

VIRIDIS DEVELOPMENT CORPORATION,
a Virginia Corporation,

              Plaintiff,

v.                                        Civil Action No. 3:14CV589

BOARD OF SUPERVISORS
OF CHESTERFIELD COUNTY, VIRGINIA, et al.

              Defendants.

## REBUTTAL MEMORANDUM IN SUPPORT OF
## MOTIONS TO DISMISS AMENDED COMPLAINT

DEFENDANTS, the Board of Supervisors of Chesterfield County, Virginia, James Holland, Steve A. Elswick, Daniel A. Gecker, Dorothy Jaeckle, Art Warren and the County of Chesterfield, Virginia (collectively referred to as "Defendants"), by counsel, submit this rebuttal memorandum in response to the memorandum filed by Viridis Development Corp. ("Viridis").

## INTRODUCTION

Viridis tells this Court that it is of "no importance" that this zoning case was filed in federal court and not in state court. (Viridis Mem. p. 1.)  According to Viridis, the fact that its claims "arise in the context of a local land use matter should be of no more importance to this Court than Miranda [v. Arizona, 384 U.S. 436 (1966)] having arisen in the context of a local police enforcement action…."  Id.  It may be of no importance to Viridis that this local land use dispute was filed in federal court, but it has, for decades, been important to the Fourth Circuit Court of Appeals.  The Fourth Circuit has concluded repeatedly and consistently that individual

local zoning decisions have no place in federal court, even when dressed in constitutional garb.[1]

Zoning decisions are quintessentially local decisions based on local state and land use policies. Town of Nags Head v. Toloczko, 728 F.3d 391 (4th Cir. 2013); MLC Automotive, LLC v. Town of Southern Pines, 532 F.3d 269 (4th Cir. 2008). Nothing differentiates the Viridis zoning case from the scores of other local zoning cases which the district courts within the Fourth Circuit have returned to state courts to resolve. Viridis' attempt to articulate a meaningful difference between its case and myriad other zoning cases which the federal courts have refused to hear is unavailing. This is true whether the case is analyzed under the abstention doctrine of Burford v. Sun Oil Co., 319 U.S. 315 (1943), or under the failure to exhaust state remedies by first seeking compensation in state court as mandated by Williamson County Reg. Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

Viridis appears to believe that, because this local zoning dispute raises a Takings Clause claim under Koontz v. St. Johns River Water Management District, 570 U.S. ___, 133 S. Ct. 2586 (2013), this zoning case is somehow immunized from the doctrines of abstention and exhaustion. Nothing raised by Viridis in its memorandum should deter this Court from returning this case to the Virginia court system where Viridis should have filed it in the first place.[2]

**FACTUAL STATEMENT**

Viridis attempts to distance itself from the facts it plead because those facts undermine the conclusory allegations of the Amended Complaint. Those facts are contained in the three

---

[1] Viridis characterizes Miranda as a case involving "infringement of fundamental private property rights…." (Viridis Mem. p. 1.) Of course, the case involved nothing of the sort. The issue in Miranda was the right of a criminal defendant to be free from compelled self-incrimination.

[2] Significantly, Koontz was a local land use dispute that was properly filed and litigated in a Florida state court and appealed to the United States Supreme Court from the Florida Supreme Court.

exhibits which Viridis attached to its Amended Complaint and which are repeatedly referenced in the Amended Complaint.  Viridis' Amended Complaint also expressly refers to, and relies on, the video of the zoning public hearing held by the Board of Supervisors on Viridis' application. The facts contained in these four documents are now properly before the Court on the Defendant's motion to dismiss.  <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d. 609, 618 (4th Cir. 1999). Viridis' attempt to ignore its own pleading arises in three separate factual scenarios:

**I.      Viridis Improperly Claims That The Defendants Were "Double Counting" Viridis' Impact.**

Viridis contends that the Board of Supervisors was attempting to "double the amount [Viridis] was required to pay under Chesterfield's own policy."  (Viridis Mem. p. 6)  Viridis alleges that the Board wanted to retain all of the cash proffers which its predecessor in title had voluntarily agreed to pay in 2006 and, in addition, make Viridis build a new turn lane into Viridis' proposed subdivision and provide drainage improvements.  The Viridis Staff Report (Exhibit 3 to the Amended Complaint) establishes that it was <u>Viridis</u> which proffered as part of its zoning application that it would construct a turn lane on Courthouse Road to turn onto Cherylann Road, the road serving Viridis' development. (Viridis Staff Report, p. 2.)    In response, County Planning Department staff advised that that the Board could appropriately consider the construction of the turn lane as adequately addressing the impact of the development on area roads.  Planning Staff told the Board that because of Viridis' proffer to build the turn lane, the Board could <u>eliminate</u> the existing transportation proffer thereby eliminating any

"double counting" of transportation impact.  (Viridis Staff Report, pp. 7-8, 10.)[3]

So far as the drainage improvements are concerned, the former owner proffered in 2006 that his cash proffers would be reduced if he constructed drainage facilities to solve the flooding problems exacerbated by the development.  (Amended Complaint, ¶ 20).  The Board accepted this proffer.[4]  In 2014, since Viridis chose not to proffer any cash proffers, there were no cash proffers to reduce in order to "offset" the cost of drainage improvements.

### II.   Viridis' Cannot "Cherry Pick" Comments from the Zoning Public Hearing.

Viridis' Amended Complaint incorporates all of the information that was presented to the Board at the Board's July 23, 2014 public hearing on Viridis' rezoning applications as well as the statements, in their entirety, made by Board members explaining the rationale for their votes. These facts are discussed at pages 3-10 of the Defendants' previous memorandum and establish that Board members voted to deny Viridis' application for a variety of legitimate land use reasons, not one of which was Viridis' request that the cash proffers proffered in 2006 be eliminated.  In contrast, Viridis invites this Court to review only a tiny portion of the entire

---

[3]  Viridis repeatedly calls the turn lane "unrelated to its project." (Viridis Mem. p. 6).  To the contrary, the Viridis Staff Report establishes that Viridis' development will create a traffic hazard at the intersection of Cherylann and Courthouse Roads which the turn lane will help to eliminate. (Viridis Staff Report, pp. 7-8).  Viridis then cites Hylton Enterprises, Inc. v. Board of Supervisors of Prince William County, 220 Va. 435, 258 S.E.2d 577 (1979) claiming that this decision precludes localities from requiring the construction of off-site roads.  Hylton is a subdivision case, not a zoning case, and holds that construction of off-site roads cannot be required as a condition of subdivision plat approval under Virginia's subdivision statutes. Proffering off-site road improvements are a proper means of addressing through zoning a development's impact on transportation infrastructure.  See Va. Code § 15.2-2298.

[4]  Viridis calls this "negotiation" and claims that "negotiating" is "required" under the County's Cash Proffer Policy.  (Viridis Mem. p. 2)  It isn't.  The Policy is attached to the Amended Complaint as Exhibit 1 and does not once discuss or mention "negotiating" with a zoning applicant.  It does say, however, that the Board can consider a variety of methods by which  a zoning applicant addresses the impact of his development on public facilities.  See, e.g., id. at A.1., A.8., A.9., B.2., B.3., B.4., B.5.

public hearing record so that Viridis can contend that the Board denied its zoning application solely because Viridis objected "to paying both the maximum cash proffers and performing public infrastructure work…."  (Viridis Mem. p. 6).  To the contrary, Board members stated at the public hearing that it was Viridis' failure to address the impact of its development on public facilities, failure to ensure the necessary quality of development in an infill development area, drainage problems, and other land use concerns that resulted in the decision to deny Viridis' application.  Id.  In fact, Viridis fails to mention that the supervisor who made the denial motion stated that neither Viridis nor any other developer is required to proffer cash to obtain zoning:

> Of course, the applicant doesn't have to make a cash proffer.  Cash proffers are just one of the many ways that an applicant accounts for the impact of development.

(Video of July 23, 2014 Public Hearing).  Viridis now baldly contends that these legitimate land use reasons were "a charade and a pretext", yet points to no fact in its Amended Complaint which supports such a contention.  In fact, Viridis' Amended Complaint does not even allege that the reasons given by Board members for denying Viridis' zoning application were anything other than genuine.

### III.    Viridis' Assertions Regarding Drainage Problems Ignore Its Own Pleadings.

Although Viridis admits that the property it purchased has a drainage problem, it appears to believe that the solution to the problem had already been approved by the County for its proposed 50-lot subdivision.  (Viridis Mem. p. 7).  Viridis is confused about the drainage issue, but the confusion is cleared up by Viridis' own exhibits.  Regardless of how its drainage problem originated, Viridis' property has a drainage problem and had it when Viridis bought the property in 2008. (Viridis Staff Report, p. 4).  This drainage problem was addressed in a pre-2014 drainage study that was approved by the County but that study did not address the increased

density being proposed by Viridis at the July 23, 2014 public hearing.  In fact, the staff report at p. 4 states unequivocally, "[t]he approved construction plan is extremely tight, and it is staff's opinion that, with any additional density, the existing [drainage] design will not meet the conditions of the previous zoning and subdivision requirements."  Thus, while Viridis may have resolved the drainage issue for the previously-approved 49-lot subdivision, Viridis had not done so for its proposed higher-density development.[5]

Viridis cannot escape the facts contained in its own Amended Complaint and the exhibits that Viridis chose to attach to it.  These facts not only contradict the story Viridis wants to tell, they establish that this case involves nothing more than a local zoning dispute over whether Viridis should develop a 49-or a 50- lot subdivision and whether it should be required, under Virginia law, to account for the impact of its development on roads, schools, parks, flooding, fire and EMS service, and libraries.

Viridis' Prayer for Relief makes clear what Viridis is seeking in this litigation.  Viridis is seeking to have this Court compel the Board of Supervisors to rezone its property:

> WHEREFORE, Viridis respectfully requests that this Court enter an Order:
>
> ○ ○ ○
>
> e. Enjoining and directing the Board through its Supervisors to grant or issue such permits or approvals without such unconstitutional conditions;

(Amended Complaint, p. 14).  Said another way, Viridis asks this Court to sit as a "board of zoning appeals" over a local land use decision, a task the Fourth Circuit has ruled should not be performed by a federal court.  MLC Automotive, 532 F.3d at 283.

---

[5]  Viridis suggests that the Viridis Staff Report was not up to date.  (Viridis Mem. p. 7).  In fact, the staff report accurately reports that Viridis did have an approved drainage plan just as Viridis says.  However, this plan did not reflect the "additional density" Viridis was seeking in 2014.  (Viridis Staff Report, p. 4).  It should also be noted that the staff report was updated 24 times between the 2012 approval of the 49-lot drainage plan and the July 23, 2014 rezoning public hearing.  Id., pp. 12-16.

## LEGAL ARGUMENT

### I.     The Court Should Abstain Under <u>Burford v. Sun Oil Company</u>.

Under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), a federal court should abstain where its decision may undermine the independence of state action on matters that are local and important to a state's sovereignty.  This is especially true where there are "difficult questions of state law" or when federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  <u>Town of Nags Head v. Toloczko</u>, 728 F.3d 391, 396 (4th Cir. 2013).  Zoning and land use cases "characteristically meet the <u>Burford</u> abstention criteria" and are considered by the Fourth Circuit to be "the paradigm of <u>Burford</u> abstention."  <u>Id.</u>  To that end, a federal court should not sit as a "zoning board of appeals" so as to intervene in local land use policy.  <u>MLC Automotive</u>, 532 F.3d 269 at 283. Viridis has acknowledged, as it must, that "the Fourth Circuit has been particularly protective of states' policies and control over zoning and land use laws as seen by the cases cited by Chesterfield…" (Viridis Mem. p. 11).  Nonetheless, Viridis attempts to skirt <u>Burford</u> abstention, claiming that – somehow – <u>this</u> zoning case is not a local land use dispute, and that <u>this</u> zoning case does not implicate any "state statutory scheme or policy".  (Viridis Mem. pp. 1, 11). Viridis could not be more wrong.

Viridis' Amended Complaint describes yet another local land use case that is the "paradigm of <u>Burford</u> abstention."  <u>Town of Nags Head</u>, 728 F.3d at 396. Viridis filed an application with Chesterfield County asking that the County's Board of Supervisors "approve an amendment to the zoning for an existing [49-lot single family residential] project" which the Board had previously approved in 2006.  (Amended Complaint, ¶ 3).  The application related to "a 22-acre parcel of land in Chesterfield, known as the Forest Ridge Project". (Amended Complaint, ¶ 10).  Viridis sought to increase density by one lot.  This higher density would

"contribute to the pre-existing problem" of flooding a downstream development known as Forest Acres.  (Amended Complaint, ¶¶ 21, 22; Viridis Staff Report, p. 4).[6]

The County has a Cash Proffer Policy (Ex. 1 to Amended Complaint) that calculates the impact of residential development on public infrastructure of the County.  (Amended Complaint, ¶ 16).  During the 2006 rezoning of the Property, the previous owner had proffered cash proffers to address the impact of its development on County schools, parks and recreation, roads, libraries and fire stations.  (Amended Complaint, ¶ 25; Viridis Staff Report, p. 10).[7]  However, Viridis' rezoning application requested that the Board eliminate these cash proffers.  (Amended Complaint, ¶ 25).  The Board of Supervisors denied Viridis' rezoning application because Viridis "failed to address the project's impact on capital facilities" (Amended Complaint ¶ 25; Viridis Staff Report, pp. 1, 2, 12); because Viridis' project was not appropriate for infill development (Board video 02:19:33 to 02:25:54); and because of the serious drainage issues which would need to be addressed if additional density was permitted. (Viridis Staff Report, p. 4)

These facts establish that Viridis' rezoning application involved a small parcel of land located in the center of Chesterfield County and raises a dispute over whether Viridis should be able to develop at a higher density without addressing the impact of its single-family development on County infrastructure.  As the Fourth Circuit has noted repeatedly, there are few disputes more local or more parochial than those arising from a local government's review of zoning.  And there is no more parochial a zoning case than a 50-lot single-family residential

---

[6] Although Viridis characterizes the impact of its development on downstream flooding as "marginal", it admits that it would "contribute" to those problems.  (Amended Complaint, ¶ 22).

[7] Viridis acknowledges that government may "insist that applicants bear the full costs of their proposals" and "may choose whether and how a permit applicant is required to mitigate the impacts of proposed development." (Viridis Mem. p. 10, quoting Koontz, 133 S. Ct. at 2595).

rezoning request like the rezoning request submitted by Viridis in this case.  Town of Nags Head, 728 F.3d at 396.

At the same time, the zoning decision at issue is intricately intertwined with important land use policies established by the Commonwealth of Virginia in Chapter 22 (Planning, Subdivision of Land and Zoning) of Title 15.2 of the Virginia Code.  The General Assembly designed the Commonwealth's zoning statutes "to encourage localities to improve the public health, safety, convenience and welfare of its citizens and to plan for the future development of communities."  Va. Code § 15.2-2200.  Chapter 22 is a complex statutory framework that balances the respective interests and obligations of land owners, neighbors and localities.  "The tension that exists between the right of a landowner to make use of his property to his advantage and the necessity that local governments be permitted to restrict the use of land within their borders in order to assure orderly and beneficial growth and redevelopment has resulted in the General Assembly, beginning in the early twentieth century, creating a statutory framework for zoning and development which places responsibilities on both landowners and localities."  Hale v. Board of Zoning Appeals for Town of Blacksburg**,** 277 Va. 250, 271, 673 S.E.2d 170, 180 (2009); see also Sinclair v. New Cingular Wireless PCS, LLC, 283 Va. 567, 574, 727 S.E.2d 40, 43 (2012) (addressing a challenge to "the statutory scheme governing planning and zoning set forth in Title 15.2 of the Code of Virginia").  This Court also likewise recognized that "[l]and use planning…is an area of uniquely  local  concern  and,  in Virginia, is the subject of an extensive regulatory scheme."  N. Va. Law Sch., Inc. v. City of Alexandria, 680 F. Supp. 222, 226 (E.D.Va. 1988).

As discussed in the Defendants' previous memorandum, the Fourth Circuit in Johnson v. Collins Entertainment Co., 199 F.3d 710, 719 (4th Cir. 1999) emphasized that federal courts

should "respect the efforts of state governments to ensure uniform treatment of essentially local problems."  Viridis seeks to undercut Johnson, arguing that "the district court was required to interpret state gambling statutes that had not yet been addressed by a state court in an area of a 'basic problem of South Carolina public policy.'"  (Viridis Mem. p. 12).  Viridis' argument is particularly unavailing considering that it is asking this Court to interpret Va. Code § 15.2-2208.1, a brand-new remedies statute that was just enacted this year by the 2014 Virginia General Assembly and which no Virginia state court has yet considered or construed.  Just as it was improper for the District Court in Johnson to interpret South Carolina's gambling statutes that had not yet been addressed by state courts, it is equally inappropriate for this Court to interpret Va. Code § 15.2-2208.1 ahead of rulings by the Virginia state courts.  Virginia courts should be "permitted the first opportunity to resolve it."  199 F.3d at 720.[8]

Viridis also gives short shrift to this Court's decision in N. Va. Law Sch., Inc. v. City of Alexandria, 680 F. Supp. 222 (E.D.Va. 1988), stating that the case was filed "only after a request for rezoning was denied" (as was Viridis' lawsuit, of course) and that the plaintiff "claimed a taking because the rezoning request left its property without access to a street...Thus, the case did not involve any alleged coercive use of governmental power."  (Viridis Mem. p. 13).  Viridis may be the only real estate developer in Virginia who would not consider governmental action depriving its property of street access "coercive use of governmental power."  In any event, this Court properly recognized that land use "is an area of uniquely local concern" that is "the subject of an extensive regulatory scheme" and that abstention was warranted.  680 F. Supp. at 227.

---

[8] Viridis also concedes that the Fourth Circuit ruled that abstention was required in Washington Gas Light Co. v. Prince George's County Council, 711 F.3d 412, 418 (4th Cir.  2013), a case which turned on "a phrase used in a state statute." (Viridis Mem. p. 13).  This description fits exactly to Viridis' claims under Va. Code § 15.2-2208.1.

Viridis attempts to divert attention away from the multitude of Fourth Circuit cases that have advised federal courts to abstain from deciding local zoning disputes by arguing that the County has not cited any cases in the Dolan/Nollan/Koontz context that have applied Burford abstention.  (Viridis Mem. p. 14).   Viridis misses the point. The Fourth Circuit, like appellate courts elsewhere, has repeatedly admonished district courts to abstain from deciding local zoning cases.  The Fourth Circuit has actually characterized zoning and land use cases as "the paradigm of Burford abstention."  Town of Nags Head, 728 F.3d at 396.  No plaintiff could legitimately imagine that his zoning case, whether brought under Dolan, Nollan, or  Koontz, should be filed in the federal court system rather than in a state trial court.  What is significant in this case is that Viridis has failed to cite a single case where a court refused to apply Burford abstention to these types of claims.

Viridis' reliance on Neufeld v. City of Baltimore, 964 F.2d 347 (4th Cir. 1992) as grounds for this Court to decline Burford abstention is equally unavailing.  In Neufeld, the plaintiff was found to be in violation of the city's zoning ordinance regarding the size of a television satellite dish.  The plaintiff alleged that the ordinance was preempted by Federal Communications Commission regulations and that the city's actions violated his rights under the First and Fourteenth Amendments.  The Fourth Circuit reversed the District Court's decision to abstain, holding that the case did not involve difficult questions of state law and would not disrupt state policy.  However, what Viridis did not mention was that the federal preemption question was paramount in the Fourth Circuit's decision.  The Fourth Circuit noted that the plaintiff had "asserted that the application of the zoning ordinance as a whole was preempted by a FCC regulation" and that a number of federal appellate courts had "emphasized that Burford

11

abstention is particularly inappropriate when preemption issues are present."   Id. at 350. Preemption is not an issue here.

Finally, Count II of the Amended Complaint (which contends that the County's Cash Proffer Policy violates the Virginia Constitution) and Viridis' claim under Va. Code § 15.2-2208.1 (seeking damages, attorney fees and costs under State law) raise issues that are indisputably limited to local and state concerns.  See Fourth Quarter Properties IV, Inc. v. City of Concord, N.C., 127 Fed. Appx. 648 (4th Cir. 2005) (question of whether damages are due to plaintiff from city under state zoning law is an issue "uniquely suited for Burford abstention…"). Viridis did not even attempt in its memorandum to challenge the fact that these state law claims are subject to Burford abstention.

## II.    The Court Should Dismiss Viridis' Federal Takings Claim (Count I) Under Williamson County.

Strangely, Viridis spends several pages of its memorandum citing law review articles and the comments of four members of the Supreme Court (including two Justices no longer on the Court) which are critical of Williamson County before conceding, as it must, that Williamson County "remains the law."  (Viridis Mem. pp. 15-17).  Indeed, Williamson County is the law of the land, and, under that case, Viridis' Fifth Amendment claim must be dismissed due to Viridis' failure to seek compensation under available state procedures.

Notwithstanding Viridis' eventual admission that Williamson County is good law, Viridis contends that Williamson County does not apply to its Fifth Amendment claim because it is not alleging a "taking" of property but, rather, an "unconstitutional burdening" of property rights under Koontz.  (Viridis Mem. p. 17).  This is a distinction  without a legal difference.  Koontz is a straight-forward application of the same Fifth Amendment Takings Clause principles previously upheld by the Supreme Court in the Nollan and Dolan cases.  As discussed in the

Defendants' previous memorandum, a number of plaintiffs have brought claims under <u>Nollan</u> and <u>Dolan</u>, but were told by the courts that <u>Williamson County</u> was controlling.  "<u>Nollan</u> and <u>Dolan</u> do not authorize challenges to permitting decisions as alleged unconstitutional takings without first seeking compensation if the state has provided the means to seek compensation…they cannot be the source to create a new breed of facial challenges that can be brought in federal court without regard to the <u>Williamson County</u> requirements."  <u>Alto Eldorado Partnership v. County of Santa Fe</u>, 634 F.3d 1170, 1179 (10th Cir. 2011), <u>cert</u>. <u>denied</u>, 132 S. Ct. 246 (2011).  <u>See also</u> <u>Paramount Contractors & Developers, Inc. v. City of Los Angeles</u>, 805 F.Supp.2d 977, 1004 (C.D. Cal. 2011) (a claim under <u>Nollan/Dolan</u> is subject to the <u>Williamson County</u> requirements as to compensation through state procedures), <u>affirmed</u>, 516 Fed. Appx. 614 (9th Cir. 1013) (table decision), <u>cert</u>. <u>denied</u>, 134 S. Ct. 907 (2014).[9]

Viridis cannot escape <u>Williamson County</u> simply because it is alleging a <u>Nollan/Dolan</u> claim under <u>Koontz</u>.  All three cases arise out of the same Takings Clause provision.  Viridis has alleged a violation of its Fifth Amendment rights under the Takings Clause and must comply with the requirements of <u>Williamson County</u> pertaining to Fifth Amendment claims by seeking compensation in Virginia courts prior to bringing this claim in federal court.  This is particularly true considering that, in response to <u>Koontz</u>, the Virginia General Assembly in 2014 enacted <u>Va. Code</u> § 15.2-2208.1 which was specifically enacted to provide an award of compensatory damages, attorneys' fees and costs in <u>Koontz</u>-type litigation.  The statute permits the recovery of damages, fees and costs to:

> … any applicant aggrieved by the grant <u>or denial</u> by a locality of any approval or permit, however described or delineated, including a special exception, special use permit, conditional use permit, rezoning, site plan, plan of development, and

---

[9] Viridis summarily dismisses these cases in a footnote as "simply impos[ing] the <u>Williamson</u> shibboleth" but does not even attempt to distinguish them.  (Virdis Mem. p. 17, n. 10).

> subdivision plan, where such grant included, <u>or denial was based upon</u>, an <u>unconstitutional condition</u> pursuant to the United States Constitution or the Constitution of Virginia…

<u>Id</u>. (emphasis added).  As can be seen, the reach of the statute explicitly extends to those circumstances where a plaintiff alleges, as does Viridis here, that his zoning application was denied based upon an unconstitutional condition.[10]

The Supreme Court observed in <u>Koontz</u> that "[i]n cases where there is an excessive demand but not taking, whether money damages are available is not a question of federal constitutional law but of the cause of action—whether state or federal—on which the landowner relies." 133 S. Ct. at 2597.  The Court then declined to discuss what remedies might be available for such a violation and remanded the case to the Florida courts (where the case had been filed – properly – in the first place).  <u>Id</u>.  Here, Viridis seeks compensatory damages in its Amended Complaint and, in its memorandum, it describes those damages as including "delay damages" and "increased construction expenses".  (Viridis Mem. p. 18, n. 11).  Virginia law provides a remedy, including damages, to a plaintiff who can prove that a denial of his zoning application was based on an unconstitutional condition.  <u>See</u> <u>Va. Code</u> § 15.2-2208.1.  The General Assembly enacted this statute to address <u>Koontz</u>-type situations and Viridis explicitly made a claim under the statute in its Amended Complaint.[11]  Viridis' Fifth Amendment claim is not ripe under <u>Williamson County</u> and this Court should dismiss the claim and require Viridis to seek

---

[10] This Court can take judicial notice of the fact that an advocate of the new statute included the Home Builders Association of Virginia (HBAV) which described it as being one of "the HBAV agenda items for this year" and that "[w]ith the unique proffers system in place in Virginia, HBAV believed it was important to make it very clear that landowners in Virginia may seek damages and relief in a State Court in Virginia, as outlined by the U.S. Supreme Court in the <u>Koontz</u> case."  http://www.hbav.com/wp-content/uploads/2014/01/2014-LB9-Final-3.11.12.pdf

[11] The remedies provided by Va. Code §15.2-2208.1 are in addition to remedies available under Virginia's declaratory judgment statute.  <u>Kitchen v. City of Newport News</u>, 485 F. Supp.2d 691, 693 (E.D. Va. 2007).

compensatory damages under <u>Va. Code</u> § 15.2-2208.1 in the Virginia State Courts, as provided for by the very statute upon which it relies.[12]

### III.      The Court Should Dismiss Count I Under Rule 12(b)(6).

Viridis' entire response to the Defendants' motion to dismiss its Fifth Amendment claim under Rule 12(b)(6) is to point out the obvious—that the Fourth Circuit's decision in <u>NAHB</u> addressed a facial challenge to the County's Cash Proffer Policy whereby Viridis is alleging an "as applied" challenge to the Cash Proffer Policy.  (Viridis Mem. pp. 23-25).  The Defendants have acknowledged that <u>NAHB</u> was a facial challenge.  (Defendants' Mem. p. 19).  What Viridis fails to acknowledge is that <u>NAHB</u> settled the legal question that is fatal to Viridis' claims in this lawsuit—whether the County's analysis of a development's impacts on a County-wide basis and averaging of those impacts on public facilities in the Cash Proffer Policy satisfied the requirements of <u>Nollan</u> and <u>Dolan</u>.  As the Fourth Circuit stated, Chesterfield County's "cash proffer policy utilizes a complex methodology that is designed to calculate the average impact of a new residential development in terms of the County's cost of providing new public facilities such as schools, roads, libraries and parks….[T]here is no reason apparent on the face of the policy why any proffer could not be determined in an amount roughly proportional to the impact of the proposed development."  <u>National Association of Home Builders of the United States v. Chesterfield County</u>, 92 F.3d 1180 (4th Circ. 1996).

Viridis makes the conclusory allegation that the impact of its development on County schools, libraries, fire stations and parks is merely "illusory".  (Viridis Mem. p. 24).  It reaches this "conclusion" by ignoring the fact that the County calculates this impact by averaging such

---

[12] As noted at pages 15-16 of Defendant's previous memorandum, Viridis' Fifth Amendment claim can also be read to allege that the County took Viridis' property without just compensation by refusing to delete the existing cash proffers from the 2006 rezoning.  If Viridis is making such a claim, it also would also be subject to dismissal under <u>Williamson County</u>.

needs on a County-wide basis, a methodology approved by the Fourth Circuit in <u>NAHB</u>. Whether or not a fire station, park, school or library is planned for the area in which Viridis' development is located, the citizens who will live in Viridis' subdivision will use public facilities and will impact those public facilities even if they go outside of the "service district" to do so.

Viridis also argues that the County tried to make Viridis "pay almost double" of the cost of its impact. (Viridis Mem. p. 24). Again, this allegation is belied by Viridis' own pleadings and the exhibits that it chose to attach to those pleadings. <u>See</u> discussion, <u>supra</u>, page 3.

Finally, Viridis argues that the County "ignored" the Cash Proffer Policy and "refused to give credit" for Viridis' public infrastructure work. (Viridis Mem. p. 24-25). The allegation is untrue on its face. The road improvements proffered by Viridis were accepted by County staff as satisfying the impact of Viridis' development on public transportation facilities. (Viridis Staff Report, p. 10) ("The applicant has proffered road improvements to mitigate the impact of the development on capital facilities, and staff finds the transportation proffer acceptable for mitigating road impacts."). With respect to County schools, parks, libraries and fire stations, Viridis did not even attempt to address the impact of its development on those facilities. It made no proffers whatsoever regarding these facilities – cash or otherwise. (Viridis Staff Report, p. 2). As noted by County staff, "the request falls short of adequately addressing the impact on school, park, library and fire station facilities." (Viridis Staff Report, p. 10).

As a matter of law, Viridis own pleadings demonstrate that the Board of Supervisors' denial of Viridis' rezoning application was constitutional and satisfied the "nexus" and "rough proportionality" tests required by <u>Nollan</u>, <u>Dolan</u> and <u>Koontz</u> as determined by the Fourth Circuit in <u>NAHB</u>. The Court should grant the Defendants' Rule 12(b)(6) motion and dismiss Count I of the Amended Complaint.

**IV.     The Court Should Dismiss Count II Under Rule 12(b)(6).**

Count II of Viridis Amended Complaint alleges that the County's Cash Proffer Policy is unconstitutional under the Virginia Constitution and violates <u>Va. Code</u> § 15.2-2298.  Citing <u>Va. Code</u> § 15.2-2298 and Virginia case law, Viridis argues that for a local government to accept proffered conditions, the rezoning request must give rise to the need for those conditions.  The Defendants do not dispute this requirement and, indeed, the Board of Supervisors follows this principle at every public hearing where it accepts proffers made by a zoning applicant.  Viridis concludes by rehashing the arguments that it previously made with respect to Count I, <u>i.e.</u>, that its proposed development does not really impact schools, libraries, parks and fires stations that are not close to Viridis' parcel.  (Viridis Mem. p. 27).  This argument fails, as a matter of law, for the reasons stated above.

**V.     The Court Should Dismiss The § 15.2-2208.1 Claim Under Rule 12(b)(6).**

<u>Va. Code</u> § 15.2-2208.1 requires that "any action" brought under the statute "shall be filed with the circuit court having jurisdiction of the land affected."  The Virginia General Assembly created this remedy and it created the means by which a plaintiff can avail itself of the remedy—in the Virginia Circuit Courts.  Viridis' only response to the explicit limitation of the statute is to raise the ghost of John Calhoun and assert that the Defendants are making a "states rights/nullification" argument.  (Viridis Mem. p. 28).  By its terms, a claim under <u>Va. Code</u> § 15.2-2208.1 is a claim that the General Assembly has made available only when pursued in a Virginia state court.  On its face, it was not meant to be available in Federal Court and should therefore be dismissed.  <u>See</u>, <u>e.g.</u>, <u>Sowe v. Maryland</u>, 2009 WL 2730284 (D. Md. 2009) (dismissing claim under Maryland Public Information Act because "[t]he statute requires suit to be filed in a state circuit court").

### VI. This Court Should Exercise Its Discretion To Dismiss Viridis' State Law Claims To Allow Resolution In The Virginia State Courts.

This Court also can, and should, exercise its discretion under 28 U.S.C. § 1367 to dismiss Count II and Viridis' prayer for damages under Va. Code § 15.2-2208.1 to allow Virginia courts the first opportunity to rule on these Virginia law claims. Viridis has stated that if its federal claims are dismissed without prejudice, it does not object to the Court declining to exercise Supplemental Jurisdiction over the state law claims. (Viridis Mem. p. 28).

## CONCLUSION

This lawsuit does not belong in this Court. For the foregoing reasons, and for the reasons stated in its previous memorandum, the Defendants request that the Court dismiss this case.

BOARD OF SUPERVISORS OF CHESTERFIELD COUNTY, VIRGINIA, et al.

By: /s/
Counsel

Jeffrey L. Mincks, VSB #18317
County Attorney
Counsel for Defendants
P. O. Box 40
Chesterfield, VA 23832
Telephone (804) 748-1491
Facsimile (804) 717-6297
mincksj@chesterfield.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the <u>20th</u> day of October, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Wyatt B. Durrette, Jr., Esquire (VSB #04719)
Robert R. Gordon, Esquire (VSB #18711)
Bruce E. Arkema, Esquire (VSB #18625)
Barrett E. Pope, Esquire (VSB #20574)
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@durrettecrump.com
rgordon@durrettecrump.com
barkema@durrettecrump.com
bpope@durrettecrump.com

By:                 /s/
Jeffrey L. Mincks, VSB #18317
County Attorney
Counsel for Defendants
P. O. Box 40
Chesterfield, VA  23832
Telephone (804) 748-1491
Facsimile (804) 717-6297
mincksj@chesterfield.gov
Counsel for Board of Supervisors of
Chesterfield County, Virginia, et al.