UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

VIRDIS DEVELOPMENT CORPORATION,

Plaintiff,

v.

BOARD OF SUPERVISORS OF
CHESTERFIELF COUNTY, VIRGINIA, *et al.*,

Defendant.

Civil Action No. 3:14–CV–589

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss the Amended Complaint ("Motion") filed by Defendants James Holland, Steve A. Elswick, Daniel A. Gecker, Dorothy Jaeckle, Art Warren, the Board of Supervisors of the County of Chesterfield, Virginia, and the County of Chesterfield, Virginia (collectively, "Defendants"). ECF No. 15. Plaintiff Virdis Development Corporation ("Plaintiff") opposes the Motion. For the reasons below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. ECF No. 15.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### a. Factual Background

This is a 42 U.S.C. § 1983 action brought by Plaintiff against Defendants, alleging that the denial by the Board of Supervisors of the County of Chesterfield, Virginia ("Board of Supervisors") of Plaintiff's application to modify its existing, approved zoning so as to allow development of a 22-acre parcel of land in Chesterfield County ("Forest Ridge") violated federal and state law. The Amended Complaint consists of two counts. Count I contends that the Board of Supervisors' zoning decision violated the Takings Clause of the Fifth Amendment of the United States Constitution. Count II contends that the Board of Supervisors' zoning decision, and its application of the Chesterfield County's Cash Proffer Policy, violated Section 11 of Article

I and Section 2 of Article VII of the Virginia Constitution as well as Va. Code § 15.2-2298. Plaintiff requested several alternative forms of relief:[1]  (1) a declaratory judgment holding that "Defendants' denial of [Plaintiff's] request to amend its rezoning application for Forest Ridge by eliminating cash proffers constitutes an unconstitutional condition on the exercise of [Plaintiff's] Fifth Amendment right to use of its property;" (2) a declaratory judgment holding that Defendants' denial as well as the Cash Proffer Policy as applied to Plaintiff are *ultra vires* and unconstitutional under the Virginia Constitution; (3) compensatory damages; (4) an Order enjoining the Board of Supervisors' to grant Plaintiff's application without the unconstitutional conditions; (5) such further relief as the Court deems just and proper.  The facts, in the light most favorable to Plaintiff, are as follows.

Forest Ridge consists of approximately 22.6 acres located near Vickilee Road in Chesterfield County, which is in the general vicinity of the intersection of Courthouse Road and Powhite Parkway.  Amended Complaint ("Am. Compl.") ¶ 10; *see* Defendants' Memorandum in Support of Motions to Dismiss Amended Complaint ("Defs.' Mem.") at 1.  In 2006, the Board of Supervisors approved the request of applicant J. Mark Sowers ("Sowers") to rezone Forest Ridge from the Agricultural zoning classification to the Residential classification.  *Id.* ¶¶ 20, 25.  As rezoned in 2006, Forest Ridge could be developed as a 49 unit residential subdivision.  *Id.* ¶¶ 14, 20; *see also* Defs.' Mem. at 4.  During the 2006 rezoning of the property, Sowers proffered cash payments to address the impact of its proposed development on schools, parks and recreation, roads, libraries and fire stations.[2]  Also, the total cash proffer of $11,225.00 per dwelling unit would increase to $15,600 per dwelling unit if Sowers did not complete certain drainage

---

[1] Plaintiff requests the following:  (1) declaratory relief pursuant to 28 U.S.C § 2201; (2) damages and injunctive relief pursuant to 42 U.S.C. § 1983; and (3) damages, attorneys' fees, and costs under Va. Code. § 15.2-2208.1, enacted by the Virginia General Assembly in 2014.  Amended Complaint ("Am. Compl.") at 13.

[2] Those case payments offered by J. Mark Sowers ("Sowers"), and accepted by the Board of Supervisors, provided for a total payment of $11,225.00 per dwelling unit.  The $11,225.00 payment was allocated across a number of capital facilities as follows:  $3,836.00 for schools, $433.00 for parks and recreation, $6,415 for roads, $250.00 for libraries, and $291.00 for fire stations.  Am. Compl. ¶ 25.

improvements that would affect storm water flooding of properties to the south.  *Id.* ¶¶ 20, 22.

In 2008, Plaintiff purchased Forest Ridge as zoned and subject Sowers' previous cash proffers.

*Id.* ¶¶ 10, 14, 25.

In 2012, Plaintiff filed an application with Chesterfield County ("the County") asking that

the Board of Supervisors "approve an amendment to the zoning for an existing [49-lot single

family residential] project" related to Forest Ridge.  *Id.* ¶ 3.  Specifically, Plaintiff's rezoning

application sought to:  (1) increase the density of its development by one lot—that is, from 49 to

50 allowable lots—and (2) eliminate Sowers' 2006 cash proffers.  *Id.* ¶ 26.

While Plaintiff's application was pending, the County had in effect a written Cash Proffer

Policy, which sets forth a methodology for calculating the cost to the County of providing public

facilities for each new residence in a proposed subdivision, including schools, roads, parks,

libraries, and fire stations.  *Id.* ¶ 16; *id.* Ex. 1 ("County Cash Proffer Policy").  The policy

expressly provides that a zoning applicant is not required to make cash proffers in order to

address the impact of his development, but that land or in-kind improvements may be proffered

instead if the applicant chooses.  *Id.* ¶¶ 16-18.  Ultimately, when considering a zoning (or

rezoning) application, the Board considers health, safety, and welfare issues and measures taken

by the zoning applicant to address his impacts on capital facilities.  *Id.* ¶ 16; *see* Ex. 1 ("County

Cash Proffer Policy").  If the in-kind proffers are accepted by the Board of Supervisors, it "is to

give credit—equal to the value of the dedicated land or the costs of the public facility

construction—against the potential maximum cash payment."  *Id.* ¶ 18.

Here, "in exchange for the elimination of the cash payments, [Plaintiff] offered to (i)

construct an off-site right hand turn lane on . . . Courthouse Road . . . and (ii) amend and then

construct the existing plans to correct [a] storm drainage problem that was not caused by Forest

Ridge."  *Id.* ¶ 26.  After conducting its own study, Plaintiff's findings demonstrated that the only

demonstrable infrastructure impacts to result from increasing the density of Forest Ridge and

eliminating the 2006 cash proffers were in the areas of transportation and environment.  In

other words, Plaintiff found that there would not be an adverse impact on any other public facilities including schools, parks and recreation, libraries and fire stations near the development. *Id.* ¶¶ 28-31. Thus, Plaintiff crafted its rezoning application with the findings from its study in mind and, as a result, with respect to schools, parks, libraries, and fire stations, Plaintiff made no cash or in-kind proffer.

After reviewing Plaintiff's application, the County's planning staff ("the staff") recommended approval of the application as to Plaintiff's offer to construct the right turn lane on Courthouse Road subject to the Board of Supervisors' approving the rezoning application. The road improvements proffered by Plaintiff were accepted by the staff as satisfying the impact of Plaintiff's development on public transportation facilities. *Id.* Ex. 3 ("Staff Report") ("The applicant has proffered road improvements to mitigate the impact of the development on capital facilities, and staff finds the transportation proffer acceptable for mitigating road impacts."). However, in their report, the staff stated that drainage and erosion problems would need to be addressed if additional density was permitted by the Board of Supervisors. *Id.* On the other hand, after engaging in a lengthy analysis of how the proposed Forest Ridge development of higher density would impact the County infrastructure, the staff opposed Plaintiff's request to completely eliminate the 2006 cash proffers because the application did "not mitigate the impacts of this development [of Forest Ridge] on school, park, library, and fire station facilities, thereby not ensuring adequate service levels are maintained and [not] protecting the health, safety, and welfare of County citizens." *Id.* The staff's report explicitly states that the basis for the staff's recommendation of denial as to the cash proffer elimination was because Plaintiff's "request falls short of adequately addressing the proposed development's impact on school, park, library[,] and fires [sic] station facilities." *Id.*[3]

---

[3] Conditions that address the impact of development on public facilities cannot be imposed by the locality, but must be voluntarily proffered by the applicant for the locality to accept them as zoning conditions. Va. Code § 15.2-2298. Thus, when Plaintiff proposed to eliminate the 2006 cash proffers

On July 23, 2014, the Board of Supervisors held a public hearing, in which it voted to deny Plaintiff's application because it "failed to address the project's impact on capital facilities." *Id* ¶ 35. As additional grounds for its denial of Plaintiff's request, the Board of Supervisors also explained that the project was not appropriate for infill development and stressed that there were serious drainage issues which result from the proposed development.[4] According to Plaintiff, "the basis for denial was [Plaintiff's] failure to accede to the demand for the maximum cash payment." *Id.* ¶ 35. Art Warren, a member of the Board of Supervisors, explained in the hearing, among much other commentary, that, under the County's Cash Proffer Policy, a rezoning applicant can proffer, in lieu of cash, a myriad of other ways of addressing the impact of the proposed development on public facilities and infrastructure. He stated that Plaintiff's application focused only on the closest facilities to the development and ignored the fact that each resident has a cumulative impact. Additionally, another supervisor, Dan Gecker, discussed his reservations about the proposed development, citing many of the issues raised by the staff in their report. So too did Supervisor Jim Holland. The Board of Supervisors' denial resulted even though Plaintiff addressed the impacts of its development in terms of building an off-site turn lane, which would benefit all communities in the neighborhood and remedy flooding issues caused by inadequate storm drainage facilities. *Id.*

### b. *Procedural Background*

On August 22, 2014, Plaintiff filed its Complaint in this Court. ECF No. 1. Defendants moved to dismiss the Complaint on September 18, 2014. ECF No. 8. Although Plaintiff did not

---

for schools, libraries, parks, and fire stations, the County could not propose alternative means to address the impact on these facilities—only Plaintiff could do so.

[4] *See* http://chesterfieldva.granicus.com/MediaPlayer.php?view_id=6&clip_id=1068. Plaintiff explicitly incorporated by reference into its Amended Complaint an internet link to the County's website where the video of the entire Board of Supervisors' public hearing on the Plaintiff's rezoning application can be viewed. Am. Compl. ¶ 35. Therefore, because Plaintiff relies on the video, it will be considered in its entirety by the Court. Fed. R. Evid. 106; *see Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (stating that documents outside of the complaint may be considered by the court upon a motion to dismiss if "integral to and explicitly relied on in the complaint"); *United States v. Jamar*, 561 F.2d 1103, 1108 (4th Cir. 1977) (allowing contemporaneous introduction of written or recorded statements that place in context other writings or recorded statements admitted into evidence which, viewed alone, may be misleading).

file an Amended Complaint until September 29, 2014, ECF No. 14, Defendants filed a motion to dismiss the Amended Complaint on September 25, 2014.  ECF No. 11.

Defendants filed the instant Motion on September 29, 2014.  ECF No. 15.  On October 14, 2014, Plaintiff filed its opposition.  ECF No. 17.  On October 20, 2014, Defendants filed a reply. ECF No. 18.

## II.    STANDARD OF REVIEW

### a.   Motion to Dismiss

When a movant challenges the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the burden is on the plaintiff to establish, by a preponderance of the evidence, that there is such jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  The court accepts all well-pleaded factual allegations as true, but is not obligated to accept a plaintiff's legal arguments or conclusions.  *Glenn v. Lafon*, 427 F. Supp.2d 675, 677 (W.D. Va. 2006).  The court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.  *Evans*, 166 F.3d at 647.  Indeed, the court weighs the evidence to determine its jurisdiction.  *Adams v. B*ain, 697 F.2d 1213, 1219 (4th Cir. 1982).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  A court ruling on a Rule 12(b)(6) motion must take as true all of the plaintiff's well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The pleadings need not make "detailed factual allegations," *id.*, but they must allege sufficient facts, accepted as true, to "state a claim for relief that is plausible

on its face," *id.* at 570.   The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation," *id.* at 678, and "while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

## III.   ANALYSIS

Defendants argue that, because the Fourth Circuit has concluded that a challenge to a local zoning decision has no place in federal court, even when dressed in constitutional garb, this Court should invoke the *Burford v. Sun Oil Co.* doctrine of abstention.   319 U.S. 315, 317-18 (1943) (holding that when timely and adequate state court review is available, federal court sitting in equity should abstain from review of cases involving difficult questions of state law or state's administration of its own regulatory schemes).    Say Defendants, the case at bar is nothing more than a local zoning dispute involving local and state concerns.   Defendants further argue tha,t even if this local zoning dispute raises a claim under the Takings Clause of the Fifth Amendment to the United States Constitution under *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 2594 (2013), the case *sub judice* is not immunized from the doctrine of *Burford* abstention.

Plaintiff does not dispute the case law backdrop concerning zoning law and local land use decisions; it merely contends that its *particular* zoning issues presented in this case are easily answered.   Plaintiff claims that the case at bar is not a classic Taking Clause case under the Fifth Amendment—that is, it is not an inverse condemnation case nor is it a case asserting a state-based claim wrapped in federal clothing.   Plaintiff challenges the "nexus" or relationship of the proposed subdivision rezoning to the impacts for which the cash proffers are purportedly used under the County's Cash Proffer Policy and argues that the imposition of the maximum cash proffer, together with other proffered conditions, is not roughly proportionate to the

impacts of its proposed Forest Ridge development.  Second, as to the state law claims, Plaintiff asserts that both Board of Supervisor' denial of its application along with its Cash Proffer Policy as it was applied to Plaintiff constituted a violation the Virginia Constitution and Va. Code § 2298.

"Abstention doctrines constitute 'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it."  *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 728 (1996)).  The Supreme Court has identified several carefully delineated categories of cases where a federal court has discretion to abstain from exercising its jurisdiction.  *New Orleans Pub. Serv. Inc., v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("NOPSI").  Specifically, the doctrine of *Burford* abstention allows a federal court to refrain from interfering with complex state regulatory schemes where state-court review is available if a case "[1] presents difficult questions of state law bearing on policy problems of substantial public import who importance transcends the result then at bar, or [2] if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush*, 517 U.S. at 726-27 (quoting *NOPSI*, 491 U.S. at 361).  The Fourth Circuit has repeatedly held that cases involving questions of state land use and zoning law are "classic example[s] of situations where *Burford* should apply," and "federal courts should not leave their indelible print on local and state land use and zoning laws by entertaining these cases and . . . sitting as a zoning board of appeals."  *MLC Automotive, LLC v. Town of S. Pines*, 532 F.3d 269, 282-83 (4th Cir. 2008) (quoting *Pomponio v. Fauquier Cty. Bd. of Supervisors*, 21 F.3d 1319, 1324 (4th Cir. 1994) (internal quotations omitted)). The Fourth Circuit has held that:

> [I]n cases in which plaintiffs' federal claims stem solely from construction of state and local land use or zoning law, not involving constitutional validity of the same and absent exceptional circumstance . . . the district courts should abstain under the *Burford* doctrine to avoid interference with a State's or locality's land use policy.

*Id.* (quoting *Pomponio*, 21 F.3d at 1328).   There is no specific formula for applying *Burford* abstention; despite the doctrine's "many forks and prongs, [its] central idea has always been one of simple comity."   *Id.* at 280 (quoting *Johnson*, 199 F.3d at 710).   *Burford* abstention is appropriate when a plaintiff's constitutional claims are, at their core, issues of "state law in federal law clothing."   *Id.* at 282 (quoting *Johnson*, 199 F.3d at 721 (cataloging cases)).   There can be no doubt:

> [v]irtually all [cases involving state or local zoning or land use laws], when stripped of the cloak of their federal constitutional claims, are state law cases.   The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes or laws that are the bases for the plaintiff's federal claims.

*Pomponio*, 21 F.2d at 1326; *see also MLC Automotive*, 532 F.3d at 276 (finding that *Burford* abstention was appropriate where complaint alleged violations of "federal and state substantive due process rights" and depended on a finding that the plaintiff had a vested right in the property as previously zoned).   Accordingly, *Burford* abstention is appropriate when "federal claims are entangled in the skein of state law that must be untangled before the federal case can proceed."   *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia*, 373 U.S. 668, 674 (1963).

   This Court will abstain from deciding the case based on the *Burford* abstention doctrine. This case involves land use questions that are the particular concern of Chesterfield County (Local Government) and the Commonwealth of Virginia (State Government).   Indeed, there are difficult questions of state and local land use law present in this case and federal intervention could be disruptive of the Commonwealth's efforts to establish a coherent policy with respect to a matter of public concern.   *See Quackenbush*, 517 U.S. at 726-27 (finding that federal adjudication of the issues in that case "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern").   As noted by the Fourth Circuit, "[f]ederal claims that rest on allegations that a state agency or private actors violated state law can sometimes undermine a state's efforts to regulate uniformly."   *Martin v. Stewart*, 499 F.3d

at 367.  Stripped to its basic import, the Amended Complaint seeks to undo a zoning decision made by Chesterfield County under a proffer policy that has been upheld by the Fourth Circuit. *See NOPSI*, 92 F.3d at 1180.  Furthermore, abstention does not leave Plaintiff without a remedy or avenue of redress.  There is an extensive regulatory scheme that includes provisions for challenging zoning decisions and appealing the same.  *See* Va. Code §§ 15.1-427 to 15.1-503.2; *Meredith v. Talbot Cnty., Md.*, 828 F.2d 228, 232 (4th Cir. 1987). ("The procedures, programs, statutes, regulations, planning boards, and officials involved in the subdivision approval process qualify zoning in . . . [the County of Chesterfield, Virginia] as being governed by a complex state regulatory scheme.").

Therefore, the Virginia courts are clearly in a better position to understand local discretion in land use and zoning cases.

## IV.   CONCLUSION

Having decided that *Burford* abstention is appropriate, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss the Amended Complaint.  ECF No. 15.  The Court DISMISSES the entirety of the Amended Complaint to the extent that it seeks declaratory and/or injunctive relief and enters a STAY of the proceedings, until state proceedings are concluded, with respect to those claims where relief sought by Plaintiff is in the nature of monetary damages.[5]  This Court declines to exercise any pendent jurisdiction regarding the purely state law claims appearing in Count II.  *See* 28 U.S.C. § 1367.

Also, because Plaintiff did not file its Amended Complaint until September 29, 2014, ECF No. 14, Defendants' two motions to dismiss the amended complaint are DENIED AS MOOT, ECF Nos. 8, 11.

Let the Clerk send a copy of this Order to Plaintiff and to all counsel of record.

It is SO ORDERED.

---

[5] While the Court may not dismiss actions for damages based on abstention principles, the Court may stay or postpone the adjudication of such actions.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719–721 (1996).

_____/s/_____
James R. Spencer
Senior U. S. District Judge

**ENTERED this** __18th___ **day of February 2015**